D. C. SALISBURY v. THE WESTERN NORTH CAROLINA RAILROAD COMPANY.

*Damages—Cancellation of Deed—Possession.*

The plaintiff conveyed a tract of land to a trustee, in trust for his wife and son, but continued to reside upon it with his family. Subsequently the defendant committed the trespasses for which this action was brought, pending which the conveyance in trust was adjudged to be cancelled, having been executed under a mistake ; *Held:*

1. The deed was operative until the decree for cancellation was made.

30

2. That the plaintiff was not entitled to recover the full measure of damages sustained, but only those which affected his possession or were consistent with his interest in the premises at the time the action was begun. If he had a mere naked possession his damages would be nominal.

3. That the decree directing the cancellation of the deed did not restore to plaintiff his right to recover the full measure of the damages sustained while the deed was in operation.

4. The ruling in this case on former appeal (*91 N. C.*, 490) re-affirmed.

This is a CIVIL ACTION, and was tried before *MacRae, Judge*, at Spring Term, 1887, of BURKE Superior Court.

The plaintiff alleges in the complaint that he is the owner of a valuable grist-mill, situate at the foot of the Blue Ridge Mountains, near to a bold stream that descends rapidly from the side of that mountain, called Mill Creek.

The machinery of this mill is moved by the application of power of water, accumulated in a pond produced by a dam acr ss that stream.

About six miles above the mill, the railroad of the defendant stretches along the steep side of the mountain. At a point on it called "Mud-Cut," an area of six or seven acres of earth slipped down from the side of the mountain, towards and upon the defendant's road, obstructing and rendering the same useless until such earth should be removed. This the defendant did by a process of powerful sluicing, which carried the earth, including mud, sand and rocks, into the stream mentioned, which swept much of the same into the plaintiff's pond, nearly filling it, and thus obstructing the use of the water in moving the machinery of his mill.

The plaintiff brought this action to recover damages from the defendant, thus occasioned, sustained by him.

The defendant, in its answer, denied most of the material allegations of the complaint and, particularly for the present purpose, that the plaintiff was the owner of the mill and the land on which the same was situate, including the pond.

On the trial, the evidence produced tended strongly to prove that on the 12th day of June, 1879, before the time of the injury complained of, the plaintiff had conveyed the land mentioned, including the mill, to a trustee, for the benfit of his wife and son, as in the deed provided ; that during the continuance of the alleged injury this deed continued operative, and had full force and effect until the 12th of October, 1885, when it was declared inoperative and void by a judicial decree, the ground of the decree being, that the deed had been executed by mistake and misapprehension of the draftsman thereof as to the purpose of the plaintiff in executing the same as to the extent of the estate intended to be conveyed ; that the plaintiff had only the naked possession of the land, and the mill, certainly until the date of the decree mentioned.

Among other things, the counsel for the defendant requested the Court to instruct the jury :

" That the proceedings of record, offered by plaintiff, to cancel the deed of D. C. Salisbury to Reid is irregular and void ; that it cannot vest a title in Salisbury by relation back so as to sustain this action as owner of said land ; therefore, you should find the first issue, " No," that is, that D. C. Salisbury is not the owner of the land."

This the Court declined to give, but on the contrary, said to them : " If you believe the testimony, your response to the first and second issues should be, ' Yes.'" . The second issue submitted was : " Is plaintiff in possession of a certain merchant mill in McDowell county, on Mill Creek ? "

Under the instruction given, the jury found both issues in the affirmative.

As to damages, the Court gave this instruction :

" If you have been satisfied by the testimony that the defendant, by the process of sluicing, unlawfully washed the soil into Mill Creek, and so on down into plaintiff's pond, so as to injure its capacity, and so impair the value of plain-

tiff's mill, you will proceed to the fifth issue, and inquire what damage has resulted to the plaintiff by reason thereof; what is the difference between the property as it was before and as it became by reason of the sluicing of Mud-Cut; and in reaching your conclusion on this point you may consider the continuance or the permanence of the injury, if the testimony satisfies you to that effect, and, on the other hand, the probable cost of cleaning out the pond and putting it in condition to afford as good a flow of water as before the sluicing."

The jury, in rendering their verdict, gave the plaintiff the full measure of damages; there was judgment in his favor for the same, and the defendant appealed to this Court.

*Mr. P. J. Sinclair*, for the plaintiff.
*Messrs. D. Schenck* and *C. M. Busbee*, for the defendant.

MERRIMON, J., (after stating the case). When this case was before us by a former appeal (*Salisbury* v. *Railroad*, 91 N. C., 490), the facts appearing then substantially as they do now, except that the deed of conveyance executed by the plaintiff to the trustee mentioned, has been decreed to be inoperative, we then decided that the possession and use of the mill by the plaintiff were such as entitled him to maintain his action against the defendant, and recover such damages as he sustained by reason of the injury complained of by him, although the trustee might also sue the defendant in a separate action, and recover like damages for such injury as might affect the land, including the mill, to the detriment of the owners thereof—that is, the trustees and the the *cestui que trust*. The right and the cause of action of the plaintiff, and the same of the trustee as against the defendant, arising out of the alleged injury, were plainly pointed out as separate and distinct, each from the other. Exactly what was the character and extent of the plaintiff's pos-

session did not then appear, and now it is left largely to
conjecture. It seems that confusion and misapprehension
on the first trial of the action grew out of the fact that he
regarded himself as the absolute owner of the mill and the
land on which it was situate, and the same to a large extent
prevailed at the last trial. Indeed, it seems that he was at
the latter trial regarded as the owner of the mill, as having
sustained damages as such owner, and therefore was allowed
to recover damages for the whole injury done to the prop-
erty. This was not in harmony with what we decided and
said in the former appeal. What we then said is pertinent
and applicable here in material respects, except in so far as it
may be modified by the fact that the deed of conveyance to
the trustee was decreed to be inoperative. It was a serious
mistake to treat the plaintiff as the owner of the mill. While
ordinarily, in a case like this, the plaintiff in posession is
presumed to be the owner of the property injured, it be-
comes otherwise when his title to the land is put in issue
and the evidence proves that he is not the owner, but has a
naked possession, or a possession coupled with a particular
interest. In this case he can only recover damage to the
extent his possession, whatever its nature, has sustained
injury; and the owner may do likewise as to the injury sus-
tained by him, in a separate action. A party cannot be al-
lowed to recover damages for injury to the property of
another person as to which he is not interested. Accepting
the deed of conveyance executed by him to the trustee men-
tioned, as having been properly executed, proven and regis-
tered, he was not the owner thereof next thereafter until that
deed was decreed to be inoperative and void. It appears that
it was so decreed to be inoperative, only because of mistake.
It was not, in any view of it, absolutely void—it was only
voidable. The plaintiff might at any time have ratified it—
indeed, he did not seek to avoid it for more than six years
after he executed it. While it continued operative, and at

the time of the injury complained of, the legal title to the mill was in the trustee, and accepting the evidence of the plaintiff as true, the former had a distinct cause of action against the defendant arising out of the injury alleged, as certainly as the plaintiff had. He might have brought and maintained his action, and if he had made proof of his cause of action he would have recovered damages done to the property to the extent he sustained injury as the owner of it. The plaintiff was not interested in, and had no right to this damage; he was only entitled to damages to the extent that his possession was injured, and the measure of his damage depended upon the character of his possession. If he had a mere naked possession, the measure of his damage would be nominal; if he had a possession coupled with an interest, it would be greater and substantial, more or less, as that interest might be more or less important and affected to a greater or less degree. We cannot conceive of a just reason why the plaintiff should be allowed to recover damages sustained by the trustee, the owner of the property; and if this were allowed, the defendant would not be protected against a recovery by the trustee as to his separate cause of action. It would be manifestly unjust and iniquitous to allow such results to happen.

But it is contended that, inasmuch as the deed mentioned was annulled by a judicial decree, the plaintiff is in no wise affected by it—that the annulment relates back to the time of its execution, and the plaintiff stands, in relation to the injury complained of, just as if he had never executed the deed.

This view cannot be sustained. The deed was not void— it was only voidable, as indicated above, and without reference to how and to what extent the rights of the parties to it may be effected by the decree of annulment, as among themselves, it could not affect third parties without notice, to their prejudice as to rights and advantages that they acquired

under and by virtue of it. If, for example, the trustee, as indicated above, had a cause of action against the defendant and recovered judgment for damages, as he might have done, and the defendant paid the same, surely, in that case, the plaintiff, after the annulment of the deed, could not again recover the same damages. And if the trustee had such cause of action, and the defendant had amicably paid the damages agreed upon, and taken a proper acquittance, the plaintiff could not, after the deed was declared inoperative, receive the same in this or any action, because it would be grossly unjust to allow innocent third parties to be prejudiced by the acts of parties to the advantage of the latter, over which acts the former had and could have no control.

Nor could the decree of annulment have the effect to incorporate into the plaintiff's cause of action, sued upon, another cause of action that he did not possess at the time his action began, but acquired afterwards. The plaintiff's cause of action must generally exist and be his at the time he brings his action—otherwise, he might enlarge its compass indefinitely and impair the integrity and order of procedure. The course of procedure must be observed and upheld, however convenient it might be in this and like peculiar cases to depart from it.

While the defendant was not entitled to have the special instruction indicated, given precisely as prayed for, we think the Court should have given so much of it as was material and pertinent. If the deed was proven and registered, as it seems it was, the Court ought to have instructed the jury, in substance, that under the circumstances and for the purposes of this action the plaintiff was not the owner of the mill and the land on which it was situate; that, if they believed the evidence, he had possession of the land and mill and used the same; and to have directed their attention to the character, extent and purpose of his possession, and the

injury done to the same, occasioned by the acts of the de-defendant through its agents, as developed by the evidence.

There must be a new trial. To that end let this opinion be certified to the Superior Court.

Error.