D. B. BEACH and wife v. WILMINGTON AND WELDON RAILROAD COMPANY.

*Action for Damages—Injury to Land by Construction of Railroad—Ponding Water on Land—Compensation—Presumption—Statute of Limitations.*

1. In an action for damages to lands resulting from the construction of a railroad (which action, on the trial, was treated as one for permanent damages) it appeared that the railroad was constructed in 1889, and that the plaintiffs acquired title in 1890 and commenced their action in 1893. There was no evidence that the damage was caused simultaneously with the construction of the railroad, but it appeared that it was the result of the gradual filling up of plaintiffs' drains by deposits discharged from defendant's ditches; *Held*, that, in such case, there can be no presumption that the per-

manent damage occurred before the plaintiff's ownership, and plaintiff's action is not barred. (Clark and Montgomery, J. J., dissenting).

2. A railroad company's right to discharge its ditches on adjacent lands is, in effect, an easement appurtenant to the right of way, for which payment, as permanent damage, may be required by the owner of the servient estate.

CIVIL ACTION, by plaintiffs, for damages to their land, caused by the construction of defendant's road, tried before *Graham, J.*, and a jury, at Septemer Term, 1895, of PITT Superior Court.

B. D. Beach, for the plaintiffs, testified that he and his wife had been in the possession of the lands on Briery Swamp, described in the complaint, clearing, cultivating and residing upon them continuously since 1871. Record of division of lands of Albert Moore was introduced, in which both tracts of land described in the complaint were allotted to the *feme* plaintiff in 1890 did not go into possession of Mill Branch tract till 1890. There was testimony tending to show that the crops on both tracts had been damaged by the defendant during the three years next preceding the institution of this suit, which was begun in June, 1893. The railroad was constructed in 1889. The defendant requested the court to instruct the jury as follows: "That it is admitted that the defendant's railroad was constructed during the year 1889, and if you believe the plaintiffs' evidence, the plaintiffs acquired title to the land in the year 1890; that the original trespass or cause of damage was done by the construction of defendants railroad in 1889, and the plaintiffs not being the owners of the land at the time the original trespass was committed cannot sustain their action and are not entitled to recover anything in this action." The court declined to give the instruction; defendant excepted. Judgment was rendered for the plaintiffs for $2,000 and costs, and defendant appealed.

*Messrs. Blount & Fleming*, for plaintiff.
*Mr. John L. Bridgers*, for defendant (appellant).

DOUGLAS, J.: This action was begun in 1893. The complaint, among other things, alleges the ownership of the land; its previous proper drainage by the plaintiffs; the construction of the branch road in 1889 and the injury resulting from the diversion of the water. Paragraphs 5 and 6 are as follows:

"5. That in the construction of its road the defendant dug or caused to be dug a ditch on each side of this bed of said road, whereby a large and unusual volume of water was diverted from its natural chanel and proper course and turned upon the lands and into the canal and ditches of the plaintiffs, thereby flooding the lands and choking the ditches with sand, mud and trash so that the diverted waters, as well as the waters of the plaintiffs' lands, become ponded upon the said lands, rendering the same, which heretofore yielded good crops, worthless, or nearly so, for purpose of agriculture.

"6. That by reason of said diversion of waters and obstruction to the fall of plaintiffs' canal and ditches the defendant has within the three years next before the bringing of this action negligently and unlawfully caused large quantities of water to be poured upon the lands of the plaintiffs to the great damage of the land and the crops growing thereon, to-wit, five hundred dollars."

The defendant requested the court to instruct the jury as follows: "That it is admitted that defendant's road was constructed during the year 1889, and if you believe the plaintiffs' evidence, the plaintiffs acquired title to the land in the year 1890; that the original trespass or cause of damage was done by the construction of defendant's road in 1889, and the plaintiffs, not being the owners of the land

at the time of the original trespass was committed, cannot sustain their action and are not entitled to recover anything in this action.'' This instruction was refused and defendant excepted, which is the only exception before us.

We think the instruction was properly refused. The jury found that the plaintiffs were the owners and in possession of the land, and no other issue on this point was submitted, or tendered by the defendant. All of the issues were found in favor of the plaintiffs.

It appears from the evidence that these lands belonged to the *feme* plaintiff, having been allotted to her in 1890 in the division of her father's lands. When her father died does not appear, but certainly before the division of his lands in 1890. The plaintiffs are shown to have been in actual possession of one tract when the road was built in 1889.

The action was brought, apparently, to recover continuing damages for the three years next preceding, but by consent, or at least without objection, the issues were submitted covering only permanent damages. When this permanent damage occurred does not appear, further than by the allegation in the complaint that the injuries complained of were within three years next preceding the bringing of the action. The ditches, dug in 1889, when the road was built, were the *primary cause* of the permanent damage, but the damage itself immediately resulted from the filling up of the plaintiffs' ditches with sand, mud and trash, so that the *diverted* waters, as well as the waters of the plaintiffs' land, became ponded upon the said lands, thereby rendering them practically worthless. These lands were not immediately on the railroad or adjacent to the right of way, and it is evident that the damage could not have occurred simultaneously with the construction of the road. The cause must precede the effect and, as ditches do not fill

up instantly, considerable time may have intervened. There can, therefore, be no presumption that the permanent damag occurred before the plaintiffs' ownership, and we find no evidence to that effect.

The case of *Ridley* v. *Railroad*, 118 N. C., 996, cited and approved in *Parker* v. *Railroad*, 119 N. C., 677, lays down the rule that "the Statute of Limitations begins to run in such cases, not necesarily from the construction of the road, but from the time when the first injury was sustained." This means, of course, the first *substantial* injury, as it would be a hardship to require a plaintiff to bring an action when his recovery would necessariiy be merely nominal, and yet would be a bar to any future action. The same rule would apply, by analogy, where the first substantial damage occurred after a change in ownership. The word "permanent," as applied to injuries and damages, is apt to to mislead, as it is used not only in cases where the damage is all done at once, as, for instance, in the tearing down of a house, but also to those cases where the damage is continuing and prospective. In these latter cases the damage is called "permanent," because it proceeds from a permanent cause and will probably continue indefinitely as the natural effect of the same cause. Such is the case where the cause is apparently permanent and the damage necessarily continuing or recurrent. The interest and convenience of the public will not permit the abatement of the nuisance, and the law does not contemplate an indefinite succession of suits. Therefore, a lump sum is recoverable, at the demand of either party, in consideration cf which the defendant acquires the *right* to discharge its ditches upon the plaintiff's land. This is nothing more than an easement appurtenant to the defendant's right of way. The amount recovered is not the estimated sum of all future damages expected to result from a continuing trespass, for

such damages, running indefinitely, perhaps forever, would be utterly incapable of calculation; and, moreover, it would be giving the defendant a right to commit a wrong. The sum recoverable is the damage done to the estate of the plaintiff by the appropriation to the easement of so much of his land, or such use thereof as may be necessary to the easement. The right of leading and discharging surface water over or upon the land of another is always enumerated among the usual easements recognized both by the common and civil law.

It is true, it has been sometimes said that easements are acquired only by grant or prescription, but this applies only as between private parties and is usually a mere denial of assessment by parol. It does not apply to condemnation proceedings or other actions in the nature thereof. Indeed, this court has held, in *Blue* v. *Railroad*, 117 N. C., on p. 649, that nothing but an easement can be acquired by judgment of condemnation. While the opinion does not use the word "easement," it accurately describes an easement, and does use the appropriate term "servient tenement," as applied to the land itself. The right of the defendant to hereafter discharge its ditches upon the lands in question being an easement, acquired only by the result of this action, the plaintiffs are clearly entitled to the damages resulting from the acquisition of the easement. There is no allegation that the railroad company has ever paid any damages to any one for this injury or in consideration of the easement.

In the argument of this case before us, counsel insisted that the opinions of this court in Ridley's and Parker's cases, *supra*, are mutually inconsistent, and that one or the other would necessarily be overruled in the decision of the case. Although the Statute of Limitations is not raised in this case, we have carefuly examined the cases above cited

and can find no such inconsistencies and certainly none relating to the principles herein involved.

The judgment of the court below is affirmed.

MONTGOMERY, J., dissenting: This action was commenced in 1893.   The defendant's road was constructed in 1889. The plaintiff alleges, with sufficient clearness, that the land, of which he was in the possession, was permanently injured by the unskillful construction of its road way and ditches by the defendant company.   The fifth section of the complaint alleges ''that in the construction of its said road, the defendant dug or caused to be dug a ditch on each side of the bed of said road, whereby a large and unusual volume of water was diverted from its natural channel and proper course, and · turned upon the lands and into the canal and ditches of the plaintiff, thereby flooding the lands and choking· the ditches with sand, mud and trash, so that the diverted waters as well as the waters of the plaintiff's land became ponded upon the said land, rendering the same, which heretofore yielded good crops, worthless or nearly so for purposes of agriculture.''   In another paragraph of the complaint (the sixth) the plaintiff alleged that, by reason of the diversion of water and the obstructions complained of, the land had been damaged, and also that the crops grown thereon have been injured within three years next before the bringing of this suit.

The question of damages for a continuing injury, such as might be recovered upon the theory of abating a nuisance, and raised by the sixth paragraph of the complaint, seems to have been abandoned on the trial and the issue which was submitted to the jury was on the matter of permanent injury to the land.   In fact, in the argument here, it was admitted that by consent in the trial below the action was tried on the issue whether the land had been permanently injured or not.

The land alleged to have been damaged was described in the complaint as consisting of two tracts, Briar Swamp and Mill Branch.   The plaintiffs had been in possession of the first named tract since 1871, and the other since 1890. Both tracts were allotted to the *feme* plaintiff in the partition of the land of Albert Moore in 1890.

The defendant requested the court to instruct the jury "that it is admitted that the defendant's railroad was constructed during the year 1889, and if you believe the plaintiffs' evidence, the plaintiffs acquired title to the land in 1890; that the original trespass or cause of damage was done by the constructing of defendant's railroad in 1889, and the plaintiffs, not being the owners of the land at the time the original tresspass was committed, cannot sustain their action and are not entitled to recover anything in this action."   The court declined to give the instruction.   It ought to have been given.   The plaintiffs alleged that the damage was done by the *cutting of the ditches* along the defendant's railroad in 1889, and there was no allegation of permanent injury to the land at any other time   At that time (1889) the plaintiffs had no title to either of the tracts of land.   They could not recover for permanent injury to the land, because they were not its owners.   The only right they had in 1889 was that of possession.

The counsel who argued the case before this court seemed to think that there were some inconsistencies, especially as to the application of the Statute of Limitations, in the cases of *Ridley* v. *Railroad*, 118 N. C., 1010; and *Parker* v. *Railroad*, 118 N. C. 996.   I have examined those appeals and can see no inconsistency.

In Ridley's case, on p. 1019, four principles of law were deduced and held to be decisive of the questions involved in that appeal.   In Parker's case the same rulings were approved.   No. 4 of the deductions referred to in Ridley's case

120—64

was in the words: "The Statute of Limitations begins to run in such cases, not necessarily from the construction of the road, but from the time when the first injury was sustained;" and, in Parker's case, the court said "the right of action accrues in such cases when the first injury is sustained." This last statment was intended to be that of the general rule. There may be cases, however, where the action necessarily should be brought at the time of the construction of the road, as where the injury is manifestly permanent, and done at once by the construction of the road, and is dependent upon no contingency.

The rule, as announced in Ridley's appeal, had in view such cases, as well as those where the first injury was the beginning of the running of the Statute.

CLARK, J., dissenting: I concur in the dissent of Mr. Justice Montgomery. Since the Act of 1895, Ch. 224, all damages accruing from the construction of a railroad must be sued for within five years and the entire amount of damages must be recovered in one action. This is a very just enactment and protects such corporations from the oppression of being sued again and again *ad infinitum* on the ground of continuing damages. But this action was instituted before the passage of the Act and is governed by the former law which permitted the plaintiff to bring, at his option, an action for permanent damages, in which case the entire damages, "past, present and prospective," could be sued for in one action to which twenty years was the limitation, or, at plaintiff's election, from time to time, actions could be brought for the continuing damages, in which actions the recovery was limited to damages accruing within three years. *Ridley* v. *Railroad*, 118 N. C., 996; *Parker* v. *Railroad*, 119 N. C., 677.

Here the complaint could have been construed either as action for permanent damages or for the continuing an-

nual damages and the plaintiff could elect which remedy he would pursue. *Lewis* v. *Railroad*, N. C., 179; *Stokes* v. *Taylor*, 104 N. C., 394; *Fulps* v. *Mock*, 108 N. C.; 601; *Holden* v. *Warren*, 118 N. C., 326; *Sams* v. *Price*, 119 N. C., 572 (on page 572). The plaintiff and defendant agreed upon treating this as an action for permanent damages and an issue on that aspect of the case was submitted by consent. It was tried as such, and there was consequently error in refusing the prayer of the plaintiff. The allegation of the complaint and the proof was that the permanent damage was sustained, if at all, in 1889. The Statute necessarily ran, therefore, from that year, and as it further appeared that, as to one tract at least, the plaintiff was not the owner thereof till 1890, it was error to grant him judgment. The case should go back for a new trial, when the plaintiff may elect to take a non-suit as to damages for that tract, or the court may, in its discretion, permit him to amend the complaint so as to sue for the continuing damages only. It would seem clear that a person acquiring title to any property—whether real or personal—in 1890 cannot recover damages for a permanent impairment or injury inflicted upon that property in 1889 before he acquired it. *Salisbury* v. *Railroad*, 98 N. C., 465 (on p. 471).