MONTGOMERY, J., dissenting.
The sole purpose of this action is to recover compensation for the appropriation of the plaintiff's property by the defendant under the color of eminent domain. The plaintiff does not seek to eject the defendant, nor to interfere in the slightest *Page 357 
degree with the fullest enjoyment of the easement it claims. He does not threaten or intend to annoy the defendant by a multiplicity of suits, but, on the contrary, he asks the Court, in the exercise of its equitable jurisdiction, to award him such permanent damages as will compensate him for the appropriation of the easement. This being done, the defendant ceases to be a trespasser, and will thereafter remain in the lawful enjoyment of the easement thus acquired. There is, therefore, no question as to whether the defendant shall have the easement, but simply whether he shall pay for it. There is no pretense that the plaintiff, or any former owner of the land, has received any compensation whatever, or that any agreement, or attempt to agree, with such owner was ever made by the defendant, as required by sections 1943 and 2010 of The Code.
It is so well settled that private property can not be taken directly or indirectly, even for a public purpose, without just compensation, that it seems a work of supererogation even to restate the principle. R. R. v.Davis, 19 N.C. 451; S. v. Glen, 52 N.C. 321; Cornelius v. Glen, 52 N.C. 512;Johnston v. Rankin, 70 N.C. 550; Staton v. R. R., 111 N.C. 278, 17 L.R.A., 838.
In Johnston v. Rankin, supra, this Court says, on page 555: "Notwithstanding there is no clause in the Constitution of North Carolina which expressly prohibits private property from being taken for public use without compensation, and although the clause to that effect in the Constitution of the United States applies only to acts (521) by the United States, and not to the government of the State, yet the principle is so grounded in natural equity that it has never been denied to be a part of the law of North Carolina."
The learned judge who wrote that opinion was correct in saying that the Fifth Amendment to the Constitution of the United States, to which he evidently referred, was a restriction only upon the power of the United States, and not that of the States; but he overlooked the Fourteenth Amendment, then of recent adoption, under which it has been expressly held that a State can not appropriate private property to public use without compensation. R. R. v. Chicago, 166 U.S. 226. In that case the Court says, on page 236: "But if, as this Court has adjudged, a legislative enactment, assuming arbitrarily to take the property of one individual and give it to another individual, would not be due process of law as enjoined by the Fourteenth Amendment, it must be that the requirement of due process of law in that amendment is applicable to the direct appropriation by the State to public use and without compensation of the private property of the citizen. The Legislature may prescribe a form of procedure to be observed in the taking of private property for public use, but it is *Page 358 
not due process of law if provision be not made for compensation. Notice to the owner to appear in some judicial tribunal and show cause why his property shall not be taken for public use without compensation would be a mockery of justice. Due process of law as applied to judicial proceedings instituted for the taking of private property for public use means, therefore, such process as recognizes the right of the owner to be compensated if his property be wrested from him and transferred to the public. The mere form of the proceeding instituted against the owner, even if he be admitted to defend, can not convert the process used into due process of law, if the necessary result be to deprive him of his property without compensation."
(522) Again, the Court says, on page 234: "But a State may not, by any of its agencies, disregard the prohibition of the Fourteenth Amendment. Its judicial authorities may keep within the letter of the statute prescribing forms of procedure in the courts, and give the parties interested the fullest opportunity to be heard, and yet it might be that its final action would be inconsistent with that amendment. In determining what is due process of law, regard must be had to substance, not to form. This Court, recurring to the Fourteenth Amendment, has said: `Can a State make anything due process of law which, by its own legislation, it chooses to declare such? To affirm this is to hold that the prohibition to the States is of no avail, or has no application where the invasion of private rights is affected under the forms of State legislation.'" Citing Davidson v. New Orleans, 96 U.S. 97, 102.
It is well settled that the denial of an adequate remedy for enforcing the right is the denial of the right itself, and the adequacy of the remedy must be determined by its practical results.
In Henderson v. Mayor, 92 U.S. 259, the Court says: "In whatever language a statute may be framed, its purpose and its constitutional validity must be determined by its natural and reasonable effect."
In Simon v. Craft, 182 U.S. 427, 436, the Court says: "The essential elements of due process of law are notice and opportunity to defend. In determining whether such rights were denied, we are governed by the substance of things, and not by mere form."
These Federal citations become the more important in view of the defendant's claim to its right of way by virtue of its acceptance of the provisions of an act of Congress entitled, "An act to aid in the construction of telegraphs and secure to the Government the use (523) of the same for postal, military and other purposes," approved 24 July, 1866. For this contention it relies on Telegraph Co. v.Telegraph Co., 96 U.S. 1. Bearing in mind that the question before us is, not whether the defendant shall have its right of way, but whether *Page 359 
it shall pay for it, the case it cites becomes an authority against it. That Court, construing the act, says, on page 11: "It gives no foreign corporation the right to enter upon private property without the consent of the owner and erect the necessary structures for its business; but it does provide that, whenever the consent of the owner is obtained, no State legislation shall prevent the occupation of postroads for telegraph purposes by such corporations as are willing to avail themselves of its privileges." And again, on page 12, the Court says: "No question arises as to the authority of Congress to provide for the appropriation of private property to the uses of the telegraph, for no such attempt has been made. The use of public property alone is granted. If private property is required, it must, so far as the present legislation is concerned, be obtained by private arrangement with its owner. No compulsory proceedings are authorized. State sovereignty under the Constitution is not interfered with. Only National privileges are granted."
So broad a disclaimer should seem to settle the question, and on reason and authority we concur in the effect of the Federal decisions that the act of Congress referred to gives the defendant no right to any part of the land of the plaintiff, or to any use therein. Tel. Co. v. R. R., 6 Bissell, 158; Tel. Co. v. Tel. Co., 9 Bissell, 72.
The defendant again contends that as its poles are located on the right of way of the railroad company, that is, its potential right of way, and as it has acquired its easement from the railroad company by condemnation proceedings under The Code, it owes no further duty to the owner of the land. We can not concur in this view. The land on which the poles are situated is not in the actual (524) possession of the railroad company, and apparently never has been. On the contrary, it has been in constant cultivation by the plaintiff and those under whom he holds. The nature of the easement acquired by railroad companies under condemnation proceedings has been too recently considered by this Court to require further discussion. Shields v. R. R., 129 N.C. 1. In that case the Court says, on page 4: "It therefore seems to be the settled law in this State, so far as judicial construction can settle a question, that a railroad company by condemnation proceedings only acquires an easement upon the land condemned, with the right to actual possession of so much only thereof as is necessary for the operation of its road and to protect it against contingent damages." It is not contended that the lines of the defendant are in any degree essential to the operation of the railroad. On the contrary, it is stated in the opinion of the Court, in the proceedings under which the defendant claims to have acquired its easement, that "the railroad company denies altogether that any benefit or advantage *Page 360 
can arise to it in the erection of the telegraph lines, and, on the contrary, avers that it is detrimental to it in the last degree." Tel. Co.v. R. R., 89 Fed., 190, 196. Under the circumstances, it is clear that the additional easement claimed by the defendant is an additional burden upon the land, for which the owner is entitled to just compensation. Tel. Co. v.R. R., supra; Dailey v. State, 51 Ohio St. 348; Tel. Co. v. Pearce,71 Md. 535; Keasbey on Electric Wires, sec. 185.
The Maryland case is an able and elaborate discussion of the entire question.
The kindred question, involving the same principle, of railroads upon streets is fully considered in the well-known cases of Story
(525) v. R. R., 90 N.Y. 122, 43 Am. Rep., 146, and Lahr v. Same, 104 N.Y. 368, in which it was held that the abutting owners were entitled to compensation for the additional burden imposed upon the streets by the elevated roads. White v. R. R., 113 N.C. 610, 22 L.R.A., 627, 37 Am. St., 639, is also a well-considered case in our own Reports.
The plaintiff was not a party to the condemnation proceedings, nor have any proceedings been instituted against him by the defendant to acquire an easement or any other right. The defendant relies upon that part of section 2010 of The Code which says: "And if the use or right sought be over or upon an easement or right of way, it shall be sufficient to give jurisdiction if the person or corporation owning the easement or right of way be made a party defendant." Here the defendant stops, but The Code immediately proceeds to say: "Provided, that only the interest of such parties as are brought before the court shall be condemned in any such proceedings." By the very terms of the statute, the plaintiff now stands as if no condemnation proceedings had ever been brought.
Again, the defendant contends that the plaintiff should have proceeded to have his damages assessed under chapter 49 of The Code; but section 2010 gives the right to file a petition in condemnation proceedings to the telegraph company alone, and, with section 2011, specifically provides how the proceedings shall be commenced. Section 2012 evidently refers to the proceedings subsequent to the filing of the petition and the service of the required notices. In other words, it refers to the proceedings after the parties are all before the court. This is so held, and, we think, correctly held, in Tel. Co. v. R. R., supra, wherein the Court says, on page 192: "Inasmuch as section 2010 sets forth all the necessary statements for the petition of the telegraph company, and section 2011 provides for its service, only so much of the (526) railroad law as directs proceedings after the petition is before the court is made applicable to telegraph companies. *Page 361 
. . . For the same reason, section 1944 can not be made to apply to telegraph companies."
Again, the defendant contends that, as the plaintiff did not own the land when the poles were planted, he can not recover for the appropriation of the easement. This point was directly decided in Beach v. R. R.,120 N.C. 498, a decision which has since been uniformly followed by this Court. A subsequent purchaser can not recover for a completed act of injury to the land, as, for instance, the unlawful cutting down of trees; but if the trespasser unlawfully remains upon the land after the sale, or returns and carries away the trees, he becomes liable to the then owner, in the first case as for a continuing trespass, and in the latter for a fresh injury. If, in addition to this, the trespasser seeks to acquire the right to remain, he can do so only by the consent of the owner or under the principle of eminent domain. This is not the perpetration of a wrong, but the lawful acquisition of a right, and the damages incident thereto must be paid to the owner from whom the right is acquired. Aside from this action, the defendant has acquired no easement whatever as against the plaintiff, and if it takes that easement now, it must pay the man from whom it takes it. To say that one may acquire an easement in the land simply by an unlawful entry is an attempted extension of the doctrine of Squatter Sovereignty to an extreme which we feel entirely unable to concede.Liverman v. R. R., 109 N.C. 52; S. c., 114 N.C. 692.
In the case at bar the sole issue of permanent damages was submitted, without objection, and it is evident the parties intended that the case should so end if the plaintiff could maintain this action.
We see no material error in the admission of evidence.
This case does not come under the act of 1895, ch. 224, which applies exclusively to railroads, but we think that permanent damages can be awarded in this action, and the easement (527) thereby conveyed under the principle enunciated in Ridley v. R.R., 118 N.C. 996. This Court has said in Lassiter v. R. R., 126 N.C. 509: "Railroads are quasi- public corporations charged with important public duties, which in their very nature necessarily invoke the power of eminent domain; and therefore the courts, with practical unanimity, have created a species of legal condemnation by the allowance of so-called permanent damages. Our leading case upon this subject is Ridley v. R. R.,118 N.C. 996, 22 L.R.A., 708, where, apparently for the first time in this State, the rule is distinctly enunciated and defined. It is further developed and affirmed in Parker v. R. R., 119 N.C. 677; Beach v. R. R.,120 N.C. 498; Nichols v. R. R., 120 N.C. 495; Hocutt v. R. R.,124 N.C. 214. The provision in the act of 1895 incidentally providing for a statutory easement, rather by implication than direct *Page 362 
terms, seems to us to be in effect but little more than a legislative affirmation of the rule already enunciated in other jurisdictions and adopted in Ridley's case, which was decided a year after the act was passed."
A parity of reasoning would extend this principle to telegraph companies, as it has already been extended to water companies in Geer v.Water Co., 127 N.C. 349. In that case the Court says, on page 354: "Although not a railroad company, we think that the defendant is aquasi- public corporation in its fullest sense, and that neither the public interest nor the public safety would permit its abatement as a nuisance. We see no reason why permanent damages can not be assessed under the general principles in equity, and, in fact, we do not understand that this right is questioned by either party. The awarding such permanent damages is equivalent to the acquisition of an easement by condemnation."
(528) The refusal of the court below to set aside the verdict on account of excessive damages can not be reviewed in this Court.Goodson v. Mullen, 92 N.C. 211; Edwards v. Phifer, 120 N.C. 405;Norton v. R. R., 122 N.C. 910.
In its answer the defendant alleges "that the defendant is an interstate telegraph company, and all its lines in the State of North Carolina are engaged in interstate commerce, by their connection with other lines of said company, extending to and through all of the States of the Union, and the principal towns and cities therein, and cable lines extending across the Atlantic Ocean into the principal cities of all the nations of the earth." We do not know that we fully comprehend the extent of this allegation, but we can perhaps do no better than to quote the words ofJudge Simonton in Tel. Co. v. R. R., supra, on page 192, as follows: "It is true that the purposes of the petitioner are greatly for the public benefit, that it is an important factor in interstate commerce, one of the agencies — and a most valuable agent — in interstate commerce, and that it is of most essential service to the citizen in time of peace and to the Government in time of war. But the underlying proposition in our civilization and in Anglo-Saxon liberty is the protection of the citizen in the safety of his person and in the undisturbed enjoyment of his property. And when he is called upon to surrender that property against his will for a public purpose, he is entitled to all the safeguards which the law has thrown around the exercise of the tremendous, though wholesome, right of eminent domain." In the absence of material error, the judgment is
Affirmed.