## PHILLIPS v. POSTAL TELEGRAPH CABLE COMPANY.

(Filed June 13, 1902.)

1. EMINENT DOMAIN.

Private property may not be taken for public use, directly or indirectly, without just compensation.

2. EMINENT DOMAIN—*Damages—Due Process of Law.*

Due process of law as applied to judicial proceedings, instituted for the purpose of taking private property for public use, means such process as recognizes the right of the owner to just compensation for the property taken.

3. EMINENT DOMAIN—*Due Process of Law—Fourteenth Amendment, Constitution U. S.*

The essential element of due process of law is the opportunity to defend.

4. TELEGRAPHS—*Eminent Domain—Rev. Stat. U. S., Sec. 5267.*

Act of Congress, entitled "An act to aid in the construction of telegraphs and to secure to the government the use of the same for postal, military and other purposes," approved July 24, 1860, does not give authority to enter private property without consent of owner, but provides that where consent is obtained, no State legislation shall prevent the use of such postroads for telegraph purposes by such corporations as avail themselves of its privileges.

5. EMINENT DOMAIN—*Easements—Railroads.*

Railroad companies by condemnation proceedings acquire only an easement over the lands condemned with the right to use so much as is necessary for the operation of its road.

6. TELEGRAPHS—*Easements—Damages—Right-of-Way—Railroads.*

Telegraph line along a railroad and on the right-of-way of the railroad, is an additional burden upon the land for which the land owner is entitled to just compensation.

7. EMINENT DOMAIN—*Parties—Telegraphs.*

Condemnation proceedings by telegraph company against railroad company to condemn right-of-way, to which land owner is not a party, gives no rights against the land owner, but gives rights only against the parties before the court.

Vol. 130 —— 33

8. TELEGRAPHS—*Eminent Domain—Easements—The Code, Chap. 49, Vol. 2.*

>  Under Chapter 49 of The Code, Vol. 2, Sec. 2010, telegraph company alone has the right to file petition in condemnation proceedings. The land owner is not given such right.

9. EMINENT DOMAIN—*Trespasser—Continuing—Damages—Permanent—Easements.*

>  A purchaser of land subsequent to the taking and erection thereon of a telegraph line, may recover permanent damages for the easement taken, and the telegraph company thereby acquires the easement and right to maintain its line thereon.

10. VERDICT—*Damages—Excessive—Supreme Court—Appeal.*

>  The Supreme Court will not review refusal of court below to set aside verdict for excessive damages.

11. DAMAGES—*Permanent—Telegraphs—Acts 1895, Chap. 224.*

>  Permanent damages may be awarded a land owner who is injured by the putting of telegraph poles on his land.

MONTGOMERY, J., dissenting.

ACTION by H. T. Phillips against the Postal Telegraph Cable Company, heard by Judge *George H. Brown* and a jury, at March Term, 1901, of the Superior Court of DAVIDSON County.

This is an action in the nature of trespass to recover damages caused by the appropriation by the defendant of a part of the plaintiff's land, for the purpose of erecting and maintaining a telegraph line. The following are the material parts of the complaint and answer.

The complaint alleges the incorporation of the defendant and the plaintiff's ownership of the land. It then proceeds as follows:

"3. That the defendant has caused to be placed in and upon said land, and extending across the same the length of a

mile or more, a row of posts, and has sunk anchor wires from
some of the posts into the ground, and has strung wires over
and across the said premises, and unlawfully and wrong-
fully continues to keep up and maintain the said posts and
wires, going upon and over said lands to attend to the same,
and have thereby taken and appropriated plaintiff's said
lands to its own use, the said posts and wires are an obstruc-
tion to the plaintiff in the cultivation and use of his farm,
interfering with the use of machinery thereon, and consti-
tute a continual nuisance to plaintiff, and that plaintiff has
been and will be damaged by the maintenance of said posts
and wires and the appropriation of his lands therefor in the
sum of eight hundred dollars."

The answer denies each and every material allegation in
plaintiff's complaint.

And for further answer says:

"1. The said defendant is a telegraph company, chartered
and organized under the laws of the State of New York;
that it has, prior to the acts complained of by plaintiff in
his complaint in said cause, accepted the provisions of an
act of Congress, entitled "An act to aid in the construction
of telegraph lines, and to secure to the Government the uses
of the same for postal, military and other purposes," ap-
proved July 24, 1866 (sections 5263-5268, Revised Statutes),
and by virtue of said act and section 3964 of the Revised
Statutes, and of the laws of the State of North Carolina, and
its charter, it had the right to construct, maintain and oper-
ate its telegraph line along and upon the right-of-way of the
Southern Railway through the State of North Carolina, that
the defendant is an interstate telegraph company, and all
its lines in the State of North Carolina are engaged in inter-
state commerce, by their connection with other lines of said
company, extending to and through all the States of this
Union, and the principal towns and cities therein, and cable

lines extending across the Atlantic Ocean, into the principal cities of all the nations of the earth, and all of its lines in said county of Davidson are upon the said railway right-of-way.

"2. Defendant says, that all the holes dug in the ground and the posts planted therein, as well as the anchor-wires sunk in the ground and connecting with said posts, which are complained of by the plaintiff in the third cause of action of his complaint filed in this cause, were dug and said posts planted, and anchor-wires sunk, etc., upon the right-of-way of the Southern Railway Company, for a public use, and said right-of-way, under the statutes of this State, was acquired for the public use. Defendant denies that the construction and maintenance of any of the poles and wires upon the lands claimed by the plaintiff in his said complaint at all interferes with his lawful right to the use said lands, and denies that the construction and maintenance of said telegraph line was and is unlawful, and a nuisance, and that plaintiff has been or will be damaged thereby in the sum of eight hundred dollars, or any sum whatever.

"3. Defendant says the lands claimed by plaintiff in the third cause of action in his complaint, upon which it constructed its telegraph poles and strung its wires and planted its anchors, are a part and parcel of the right-of-way of the Southern Railway Company, which, by virtue of Section 3964 of the Revised Statutes of the United States, is a "Post Road," and, by authority of Sections 5263-5268, Revised Statutes, it had the right to construct its lines thereon, and that said telegraph poles, wires and guy-wires were constructed thereon by the consent of the Southern Railway Company, and by the payment of just compensation to the Southern Railway Company.

"4. For further plea, the defendant says:

"If the posts and guy-wires which plaintiff, in third cause

of his said complaint, says were placed and are extending across his lands, for the length of a mile or more, with wires strung thereon, are upon the lands of the plaintiff, as alleged in said third cause of action, plaintiff is entitled to receive in this action the actual cash value of the land actually occupied by such poles and guy-wires, and nothing more, as damages for the construction and maintenance of said telegraph line thereon."

By permission of the Court defendant filed the following amendment to its answer:

"And before the construction of the said telegraph line along and upon the said right-of-way, defendant company procured such right-of-way by regular condemnation proceedings, instituted in the Superior Court of the county of Guilford, State of North Carolina, which proceedings were removed by the defendant, the said Southern Railway Company, from said Court into the Circuit Court of the United States for the Western District of the State of North Carolina, and by virtue and authority of the orders, judgments and decrees of said Court, the right of said defendant telegraph company to condemn so much of the right-of-way of the said Southern Railway Company was adjudged, to construct, maintain and operate its telegraph line along and upon the right-of-way of the said Southern Railway Company from Charlotte, North Carolina, to the State line between the States of North Carolina and Virginia, where said right-of-way crosses the same, and from the city of Greensboro, in said county of Guilford, to the city of Raleigh, in said State, and from said city of Greensboro to the city of Winston in said State, which includes the lands along and upon the right-of-way of said Southern Railway Company in the county of Davidson, claimed by plaintiff in his declaration as his property. And on the 20th and 21st days of April, 1900, by authority of said Court, damages were duly assessed by commis-

sioners appointed by said Court, to the said Southern Railway Company for such right and privileges, whose award was reported to said Court and filed in the office of the Clerk of said Court on the said 21st day of April, 1900, to which award no exceptions were filed by the said Southern Railway Company within the time authorized by the statutes of the State of North Carolina, in conduct of said proceedings, for the filing of the same, and at the time of filing the same the said defendant company paid into the office of the Clerk of said Court for the said railway company the amount of said award, together with the costs in said cause."

The following judgment was rendered:

"This cause coming on to be heard upon the facts admitted in the pleadings and upon the facts admitted by counsel upon the trial and hereto annexed, and the jury having found the issue as follows:

"What permanent damages does plaintiff's land sustain by reason of the existence of defendant's telegraph line across said land within the right-of-way of the railroad company?

"Answer: '$190.'

"It is adjudged that plaintiff recover of defendant the sum of one hundred and ninety dollars, together with costs of action."

The following facts were admitted by the parties to the action: That the land described in the complaint is the land of plaintiff, subject to the rights and titles of the North Carolina Railway Company by virtue of the charter, Laws of North Carolina, 1848-'49, Chapter 82, and its lessee, the Southern Railway Company, and that plaintiff acquired his title by deed in May, 1900, which deed covers the land described in the complaint; that on January, 1900, the defendant company constructed a telegraph line across said land within and upon the right-of-way of the said North Carolina Railway Company, by placing 31 or 32 poles thereon, with

telegraph wires overhead thereon; that so far as the said North Carolina Railroad Company and its lessee, the Southern Railway Company, are concerned, defendant company acquired by condemnation proceedings under the statutes of North Carolina, The Code, Chapter 49, the right to construct its telegraph line along and upon the right-of-way of the said North Carolina Railway Company and its lessee, the Southern Railway Company, but that neither plaintiff nor those under whom he holds, were parties to the said condemnation proceedings; that the said telegraph line was constructed with and by the consent of the Southern Railway Company; that the Southern Railway Company is the lessee of the North Carolina Railway Company to the entire right-of-way, property and franchise of said railroad in Davidson County, which lease was made and entered into on the .. day of ...., 18.., for a period of 99 years, which lease is properly recorded in the office of the Register of Deeds for Davidson County; that the North Carolina Railway Company was chartered under the laws of North Carolina, Laws 1848-'49, Chapter 82, which act is hereby made a part of this case on appeal; that the defendant company is a corporation duly incorporated under the laws of the State of New York, with authority to construct its telegraph line through the United States, including the State of North Carolina, and along and upon the way of the Southern Railway Company; that the defendant company had, prior to the construction of its line upon the right-of-way of the Southern Railway Company through Davidson County, duly accepted the provisions of an act of Congress entitled, "An act entitled an act to aid in the construction of telegraph and secure to the Government the use of the same for postal, military and other purposes," approved July 24, 1860.

From a judgment for the plaintiff, the defendant appealed.

*E. E. Raper,* for the plaintiff.

*J. R. McIntosh, F. H. Busbee,* and *Walser & Walser,* for the defendant.

DOUGLAS, J., after stating the case. The sole purpose of this action is to recover compensation for the appropriation of the plaintiff's property by the defendant under the color of eminent domain. The plaintiff does not seek to eject the defendant, nor to interfere in the slightest degree with the fullest enjoyment of the easement it claims. He does not threaten or intend to annoy the defendant by a multiplicity of suits, but, on the contrary, he asks the Court, in the exercise of its equitable jurisdiction, to. award him such permanent damages as will compensate him for the appropriation of the easement. This being done, the defendant ceases to be a trespasser, and will thereafter remain in the lawful enjoyment of the easement thus acquired. There is, therefore, no question as to whether the defendant shall have the easement, but simply whether he shall pay for it. There is no pretense that the plaintiff, or any former owner of the land, has received any compensation whatever, or that any agreement, or attempt to agree, with such owner was ever made by the defendant, as required by Sections 1943 and 2010 of The Code.

It is so well settled that private property can not be taken directly or indirectly, even for a public purpose, without just compensation, that it seems a work of supererogation even to restate the principle. *Railroad v. Davis,* 19 N. C., 451; *State v. Glen,* 52 N. C., 321; *Cornelius v. Glen,* 52 N. C., 512; *Johnston v. Rankin,* 70 N. C., 550; *Staton v. Railroad,* 111 N. C., 278, 17 L. R. A., 838.

In *Johnston v. Rankin, supra,* this Court says, on page 555: "Notwithstanding there is no clause in the Constitution of North Carolina which expressly prohibits private property from being taken for public use without compensation, and although the clause to that effect in the Constitution of the

United States applies only to acts by the United States, and not to the government of the State, yet the principle is so grounded in natural equity that it has never been denied to be a part of the law of North Carolina."

The learned Judge who wrote that opinion was correct in saying that the Fifth Amendment to the Constitution of the United States, to which he evidently referred, was a restriction only upon the power of the United States, and not that of the States; but he overlooked the Fourteenth Amendment, then of recent adoption, under which it has been expressly held that a State can not appropriate private property to public use without compensation. *C., B. and Q. R. R. Co. v. Chicago,* 166 U. S., 226. In that case the Court says, on page 236: "But if, as this Court has adjudged, a legislative enactment, assuming arbitrarily to take the property of one individual and give it to another individual, would not be due process of law as enjoined by the Fourteenth Amendment, it must be that the requirement of due process of law in that amendment is applicable to the direct appropriation by the State to public use and without compensation of the private property of the citizen. The Legislature may prescribe a form of procedure to be observed in the taking of private property for public use, but it is not due process of law if provision be not made for compensation. Notice to the owner to appear in some judicial tribunal and show cause why his property shall not be taken for public use without compensation would be a mockery of justice. Due process of law as applied to judicial proceedings instituted for the taking of private property for public use means, therefore, such process as recognizes the right of the owner to be compensated if his property be wrested from him and transferred to the public. The mere form of the proceeding instituted against the owner, even if he be admitted to defend, can not convert the process used into due process of law, if the necessary result be to deprive him of his property without compensation."

Again, the Court says, on page 234: "But a State may not, by any of its agencies, disregard the prohibition of the Fourteenth Amendment. Its judicial authorities may keep within the letter of the statute prescribing forms of procedure in the Courts, and give the parties interested the fullest opportunity to be heard, and yet it might be that its final action would be inconsistent with that amendment. In determining what is due process of law, regard must be had to substance, not to form. This Court, recurring to the Fourteenth Amendment, has said: 'Can a State make anything due process of law which, by its own legislation, it chooses to declare such? To affirm this is to hold that the prohibition to the States is of no avail, or has no application where the invasion of private rights is affected under the forms of State legislation.' " Citing *Davidson v. New Orleans,* 96 U. S., 97, 102.

It is well settled that the denial of an adequate remedy for enforcing the right is the denial of the right itself, and the adequacy of the remedy must be determined by its practical results.

In *Henderson v. Mayor,* 92 U. S., 259, the Court says: "In whatever language a statute may be framed, its purpose and its constitutional validity must be determined by its natural and reasonable effect."

In *Simon v. Craft,* 182 U. S., 427, 436, the Court says: "The essential elements of due process of law are notice and opportunity to defend. In determining whether such rights were denied, we are governed by the substance of things, and not by mere form."

These Federal citations become the more important in view of the defendant's claim to its right-of-way by virtue of its acceptance of the provisions of an act of Congress entitled, "An act to aid in the construction of telegraphs and secure to the Government the use of the same for postal, military and

other purposes," approved July 24, 1860. For this conten-
tion it relies on the case of *Pensacola Telegraph Co. v. W. U.
Tel. Co.,* 96 U. S., 1. Bearing in mind that the question
before us is, not whether the defendant shall have its right-of-
way, but whether it shall pay for it, the case it cites becomes
an authority against it. That Court, construing the act,
says, on page 11: "It gives no foreign corporation the right
to enter upon private property without the consent of the
owner and erect the necessary structures for its business; but
it does provide that, whenever the consent of the owner is ob-
tained, no State legislation shall prevent the occupation of
postroads for telegraph purposes by such corporations as are
willing to avail themselves of its privileges." And again,
on page 12, the Court says: "No question arises as to the
authority of Congress to provide for the appropriation of pri-
vate property to the uses of the telegraph, for no such attempt
has been made. The use of public property alone is granted.
If private property is required, it must, so far as the present
legislation is concerned, be obtained by private arrangement
with its owner. No compulsory proceedings are authorized.
State sovereignty under the Constitution is not interfered
with. Only National privileges are granted."

So broad a disclaimer should seem to settle the question,
and on reason and authority we concur in the effect of the
Federal decisions that the act of Congress referred to gives
the defendant no right to any part of the land of the plaintiff,
or to any use therein. *Tel. Co. v. R. Co.,* 6 Bissell, 158;
*Tel. Co. v. Tel. Co.,* 9 Bissell, 72.

The defendant again contends that as its poles are located
on the right-of-way of the railroad company, that is, its poten-
tial right-of-way, and as it has acquired its easement from
the railroad company by condemnation proceedings under
The Code, it owes no further duty to the owner of the land.
We can not concur in this view. The land on which the poles.

are situated is not in the *actual* possession of the railroad company, and apparently never has been. On the contrary, it has been in constant cultivation by the plaintiff and those under whom he holds. The nature of the easement acquired by railroad companies under condemnation proceedings has been too recently considered by this Court to require further discussion. *Shields v. Railroad,* 129 N. C., 1. In that case the Court says, on page 4: "It therefore seems to be the settled law in this State, so far as judicial construction can settle a question, that a railroad company by condemnation proceedings only acquires an easement upon the land condemned, with the right to actual possession of so much only thereof as is necessary for the operation of its road, and to protect it against contingent damages." It is not contended that the lines of the defendant are in any degree essential to the operation of the railroad. On the contrary, it is stated in the opinion of the Court, in the proceedings under which the defendant claims to have acquired its easement, that "the railroad company denies altogether that any benefit or advantage can arise to it in the erection of the telegraph lines, and, on the contrary, avers that it is detrimental to it in the last degree." *Postal Tel. Co. v. So. Ry. Co.,* 89 Fed. Rep., 190, 196. Under the circumstances, it is clear that the additional easement claimed by the defendant is an additional burden upon the land, for which the owner is entitled to just compensation. *Tel. Co. v. Railroad Co., supra; Dailey v. State,* 51 Ohio St., 348; *Am. Tel. Co. v. Pearce,* 71 Md., 535; Keasbey on Electric Wires, Sec. 185.

The Maryland case is an able and elaborate discussion of the entire question.

The kindred question, involving the same principle, of railroads upon streets is fully considered in the well-known cases of *Story v. N. Y. Elevated R. Co.,* 90 N. Y., 122, 43 Am. Rep., 146, and *Lahr v. Same,* 104 N. Y., 268, in which

it was held that the abutting owners were entitled to compensation for the additional burden imposed upon the streets by the elevated roads. *White v. Railroad,* 113 N. C., 610, 22 L. R. A., 627, 37 Am. St. Rep., 639, is also a well-considered case in our own Reports.

The plaintiff was not a party to the condemnation proceedings, nor have any proceedings been instituted against him by the defendant to acquire an easement or any other right. The defendant relies upon that part of Section 2010 of The Code which says: "And if the use or right sought be over or upon an easement or right-of-way, it shall be sufficient to give jurisdiction if the person or corporation owning the easement or right-of-way be made a party defendant." Here the defendant stops, but The Code immediately proceeds to say: "Provided, that only the interest of such parties as are brought before the Court shall be condemned in any such proceedings." By the very terms of the statute, the plaintiff now stands as if no condemnation proceedings had ever been brought.

Again, the defendant contends that the plaintiff should have proceeded to have his damages assessed under Chapter 49 of The Code, but Section 2010 gives the right to file a petition in condemnation proceedings to the telegraph company alone, and, with Section 2011, specifically provides how the proceeding shall be commenced. Section 2012 evidently refers to the proceedings subsequent to the filing of the petition and the service of the required notices. In other words, it refers to the proceedings *after* the parties are all before the Court. This is so held, and we think correctly held, in *Telegraph Co. v. Railway Co., supra,* wherein the Court says, on page 192: "Inasmuch as Section 2010 sets forth all the necessary statements for the petition of the telegraph company, and Section 2011 provides for its service, only so much of the railroad law as directs proceedings after the petition is

before the Court is made applicable to telegraph companies.
* * * For the same reason, Section 1944 can not be
made to apply to telegraph companies."

Again, the defendant contends that, as the plaintiff did not
own the land when the poles were planted, he can not recover
for the appropriation of the easement. This point was di-
rectly decided in *Beach v. Railroad*, 120 N. C., 498, a deci-
sion which has since been uniformly followed by this Court.
A subsequent purchaser can not recover for a *completed* act
of injury to the land, as, for instance, the unlawful cutting
down of trees; but if the trespasser unlawfully remains upon
the land after the sale, or returns and carries away the trees,
he becomes liable to the then owner, in the first case as for
a continuing trespass, and in the latter for a fresh injury.
If, in addition to this, the trespasser seeks to acquire the right
to remain, he can do so only by the consent of the owner or
under the principle of eminent domain. This is not the per-
petration of a wrong, but the lawful acquisition of a right,
and the damages incident thereto must be paid to the owner
from whom the right is acquired. Aside from this action,
the defendant has acquired no easement whatever as against
the plaintiff, and if it takes that easement now, it must pay
the man from whom it takes it. To say that one may acquire
an easement in the land simply by an unlawful entry, is an
attempted extension of the doctrine of Squatter Sovereignty
to an extreme which we feel entirely unable to concede.
*Livenan v. Railroad*, 109 N. C., 52; S. C., 114 N. C., 692.

In the case at bar, the sole issue of permanent damages was
submitted, without objection, and it is evident the parties in-
tended that the case should so end if the plaintiff could main-
tain this action.

We see no material error in the admission of evidence.

This case does not come under the act of 1895, Chap. 224,
which applies exclusively to railroads, but we think that per-

manent damages can be awarded in this action, and the ease-
ment thereby conveyed under the principle enunciated in
*Ridley v. Railroad.* This Court has said in *Wiley J. Lassi-
ter v. Railroad,* 126 N. C., 509: "Railroads are *quasi* public
corporations charged with important public duties, which in
their very nature necessarily invoke the power of eminent
domain; and therefore the Courts, with practical unanimity,
have created a species of legal condemnation by the allow-
ance of so-called 'permanent damages.' Our leading case
upon this subject is *Ridley v. Railroad,* 118 N. C., 996, 22
L. R. A., 708, where, apparently for the first time in this
State, the rule is distinctly enunciated and defined. It is
further developed and affirmed in *Parker v. Railroad,* 119 N.
C., 677; *Beach v. Railroad,* 120 N. C., 498; *Nichols v. Rail-
road,* 120 N. C., 495; *Hocutt v. Railroad,* 124 N. C., 214.
The provision in the act of 1895 incidentally providing for
a statutory easement, rather by implication than direct terms,
seems to us to be in effect but little more than a legislative
affirmation of the rule already enunciated in other jurisdic-
tions and adopted in Ridley's case, which was decided a year
after the act was passed."

A parity of reasoning would extend this principle to tele-
graph companies, as it has already been extended to water
companies in *Geer v. Water Co.,* 127 N. C., 349. In that
case the Court says, on page 354: "Although not a railroad
company, we think that the defendant is a *quasi* public cor-
poration in its fullest sense, and that neither the public in-
terest nor the public safety would permit its abatement as a
nuisance. We see no reason why permanent damages can
not be assessed under the general principles in equity, and,
in fact, we do not understand that this right is questioned by
either party. The awarding such permanent damages is
equivalent to the acquisition of an easement by condemna-
tion."

528 IN THE SUPREME COURT. [130

PHILLIPS v. TELEGRAPH CO.

The refusal of the Court below to set aside the verdict on account of excessive damages can not be reviewed in this Court. *Goodson v. Mullen,* 92 N. C., 211; *Edwards v. Phifer,* 120 N. C., 405; *Norton v. Railroad,* 122 N. C., 910.

In its answer, the defendant alleges "that the defendant is an interstate telegraph company, and all its lines in the State of North Carolina are engaged in interstate commerce, by their connection with other lines of said company, extending to and through all of the States of the Union, and the principal towns and cities therein, and cable lines extending across the Atlantic Ocean into ,the principal cities of all the nations of the earth." We do not know that we fully comprehend the extent of this allegation, but we can perhaps do no better than to quote the words of Judge Simonton in *Telegraph Co. v. Railway Co., supra,* on page 192, as follows: "It is true that the purposes of the petitioner are greatly for the public benefit, that it is an important factor in interstate commerce, one of the agencies—and a most valuable agent—in interstate commerce, and that it is of most essential service to the citizen in time of peace and to the Government in time of war. But the underlying proposition in our civilization and in Anglo-Saxon liberty is the protection of the citizen in the safety of his person and in the undisturbed enjoyment of his property. And when he is called upon to surrender that property against his will for a public purpose, he is entitled to all the safeguards which the law has thrown around the exercise of the tremendous, though wholesome, right of eminent domain." In the absence of material error, the judgment is

Affirmed.

MONTGOMERY, J., dissents.