## SEABOARD AIR LINE RAILWAY COMPANY v. CITY OF WILMINGTON.

(Filed 15 March, 1911.)

**Cities and Towns—Streets—Easements—Value—Abutting Owners—Reversion—Contracts—Interpretation of Statutes.**

The plaintiff, a railroad, and a terminal company, desirous of connecting their property, entered into an agreement with a city that it should agree to the procurement of a legislative act authorizing the condemnation of a street to effectuate that purpose, the former corporations agreeing to pay the city for the easement and to build certain improvements on their adjoining lands; the act passed according to this agreement, providing that under certain named conditions the street should revert to the city for public purposes. The plaintiff denied the right of the city to compensation for the easement over the street, upon the ground that, as abutting owners, they held the fee therein: *Held,* (1) a city holds the easement in its streets in trust for all its citizens, and was entitled to compensation from the plaintiffs; (2) here it was entitled to compensation under an express agreement relative to the passage of the act; (3) the act itself recognized the value of the easement in the street to the city, and provided for the reversion under named conditions.

APPEAL by plaintiff from *Whedbee, J.,* at December Term, 1910, of NEW HANOVER.

The facts are sufficiently stated in the opinion of *Mr. Chief Justice Clark.*

*J. D. Bellamy* for plaintiff.
*W. M. Bellamy* for defendant North Carolina Terminal Company.
*Herbert McClammy* for defendant City of Wilmington.

CLARK, C. J.   This is a proceeding under chapter 39, Pr. Laws 1909, to condemn the western end of Brunswick Street in Wilmington, where it touches upon the Cape Fear River. The plaintiff and the terminal company, one of the defendants, deemed that it would be beneficial to condemn this western end, 175 feet in length, of the street which lay between them, in order to connect their property, and entered into an agree-

ment with the city of Wilmington by which it consented that an act should be passed permitting the condemnation of the street. It was specified in this agreement that the city of Wilmington should be paid for its rights in the street whatever the commissioners in the condemnation proceedings should find to be a just value. In consideration of such compensation and the inducement that the plaintiff agreed to build warehouses, enlarge its terminal facilities, and make other improvements, requiring considerable expenditure of money, upon the premises to be so condemned, the city consented to the passage of the act.

In the condemnation proceedings the value of that part of the street which was so condemned, 66 feet wide and 175 feet long, was assessed at $12,000. The interest of the terminal company therein was assessed at $3,000 and the interest of the plaintiff at $3,000, and the value of the city's interest was assessed at $6,000. Judgment was entered upon the award and the plaintiff and the said terminal company excepted and appealed, upon the ground that upon the condemnation of the street the ownership of the soil therein reverted to the abutting proprietors, said terminal company and the plaintiff, and that therefore the city had no interest therein for which damages could be assessed. As this Court said in *Spilman v. Navigation Co.*, 74 N. C., 675, in reference to an argument therein presented, this proposition presents "an amusing fallacy which is worth preserving." *Roberts v. Baldwin,* 151 N. C., 409.

It sometimes happens that a city owns the fee simple in the streets which it retains when that part of the town is laid off, as is the case with the city of Raleigh, where the State holds the streets in fee in trust for the city. It does not appear that the city of Wilmington does not own the fee simple in Brunswick Street at this point. But if it were otherwise, it certainly owned an easement therein in trust for all the people of the city, and when that easement, by authority of the General Assembly, is condemned and taken away, it is entitled to compensation for its assessed value (unless the act provides otherwise) as much so as the adjacent proprietors have a right to have the value of their reversion assessed. Indeed, here by ex-

press agreement the city consented to the passage of the act upon condition that it should be paid the value of its easement in said street.

It is admitted that if the city is entitled to anything at all, it is entitled to the sum of $6,000, which has been assessed as the value of its easement in the street. The proposition of the two adjacent corporations, who have cast longing eyes upon the land occupied by the broad street between them which they wish to appropriate for their own uses, is that if they appropriate the same by condemnation proceedings they shall simply take it for division between themselves, leaving the city without compensation for the loss of its easement. Yet without the consent of the city it cannot be conceived that the Legislature would have authorized the taking of the street for private ownership, nor that the city would have consented to the passage of the act without compensation being therein provided for the loss of the use of the street by its citizens.

Indeed, the statute provides that if the plaintiff shall not within six months begin the enlargement of its terminal facilities the land condemned under this act shall "revert to the city for public purposes . . . upon return to said railway of the amount of money paid by it or them (its receivers) under the condemnation proceedings." This clearly contemplates payment by the plaintiff to the city for the value of its easement in the street, to be assessed in such condemnation proceedings.

Affirmed.