## DUKE POWER CO. v. TOMS et al.
### No. 4743.

Circuit Court of Appeals, Fourth Circuit.
March 10, 1941.

W. S. O'B. Robinson, Jr., of Charlotte, N. C. (W. B. McGuire, Jr., of Charlotte, N. C., on the brief), for appellant.

Thomas H. Franks, of Hendersonville, N. C., and Thomas L. Johnson, of Asheville, N. C. (T. A. Uzzell, Jr., of Asheville, N. C., on the brief), for appellees.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal in an action filed in a North Carolina state court under Sec. 1743 of the North Carolina Code to quiet title to land, and removed by defendant into the court below. Plaintiffs alleged that they were the owners of a five-sixths interest in the minerals in a 100 acre tract of land described in the complaint, that defendant denied their right to the minerals and that defendant had flooded a large portion of the land with the result that their right of access to the minerals had been destroyed. Defendant denied the title of plaintiffs to the mineral rights, pleaded the right as a public service corporation to impound waters on the land and alleged that plaintiffs were barred from asserting any rights against defendant by the several statutes of limitations of the state, by laches, and by estoppel. The trial judge directed verdict in favor of plaintiffs and against defendant on issues directed to ownership, limitations, laches and estoppel; and from a judgment thereon to the effect that plaintiffs were the owners of the mineral rights in controversy, the defendant has appealed. Defendant contends that the court erred in directing verdict against it on the several issues submitted and also in not determining fully the controversy between the parties and adjudicating the rights of defendant with respect to ponding water on the land.

The facts may be briefly stated. Plaintiffs are the grantees of a five-sixth interest in the minerals in a 100 acre tract of land in Henderson County, North Carolina. They claim through mesne conveyances from one Levi Jones who conveyed the five-sixths mineral interest in the land to their predecessor in title in the years 1884 and 1887. Jones was shown to have entered into possession of the land in the year 1867 under a deed describing it by metes and bounds and to have continued in possession for more than seven years thereafter. In 1920 defendant, an electric power company, enjoying the right of eminent domain, constructed a power dam which obstructed the waters of Green River and caused them to flood a portion of the 100 acre tract. Plaintiffs acquired their title to the mineral interests some time after the construction of the dam and the flooding of the land and instituted this action in the year 1936.

On the question of the ownership of the mineral interests claimed by plaintiffs, we think that verdict was properly directed in their behalf. They showed more than seven years adverse possession by Levi Jones of the tract of land in controversy, under deed from Mordecai Morgan dated Dec. 12, 1867. This deed constituted color of title in Jones; and he was shown to have been in possession of the land, living on it, farming it and conducting mining operations on it from 1867 to the time of his conveyance of the mineral interests in the years 1884 and 1887. As he was in possession under color of title, his possession extended to the boundaries of the deed constituting color. Simmons v. Defiance Box Co., 153 N.C. 257, 69 S.E. 146. And the possession for more than seven years ripened his title to the entire property including the mineral interests; for under Sec. 426 of the North Carolina Code title is deemed to be out of the state where the state is not a party to the action, and, where title is out of the state, seven years adverse possession under known and visible lines and boundaries and under color of title is sufficient. N.C.Code Sec. 428; Mobley v. Griffin, 104 N.C. 112, 10 S.E. 142. In 1884 and 1887 Jones conveyed five-sixths of these mineral interests to other persons, thereby separating the mineral interests from the surface rights in the land; and plaintiffs hold their interest in the minerals through mesne conveyances, the validity of which is not questioned.

Defendant contends that adverse possession is not established because it is said that the boundaries of the deed to Levi Jones have not been located. This contention seems not to have been seriously pressed in the court below; and we think it is without merit. M. L. Jones, son of Levi Jones, testified that he had known the boundaries of the land from childhood; and a surveyor located such of them as are not now covered by the waters of defendant's pond. The fact that, as a result of the impounding of water some of the boundaries have been submerged and cannot now be located does not destroy the value of the testimony as to their location at the time of the adverse possession relied on. It was clearly competent for the witness to testify

that he knew the land described in the deed to Levi Jones and to the acts of possession occurring on that land. Virginia-Carolina Tie & Wood Co. v. Dunbar, 4 Cir., 106 F.2d 383; McQueen v. Graham, 183 N.C. 491, 111 S.E. 860; Singleton v. Roebuck, 178 N.C. 201, 100 S.E. 313.

As to laches, limitations and estoppel, nothing is shown to call any of these into play, except with respect to defendant's ponding of water, as to which we shall have more to say hereafter. After the severance of the mineral interests from the surface rights in the land, which occurred as a result of the execution of the deeds of 1884 and 1887, the rights of the holders of the mineral interests were not affected by the occupation and user made of the surface, except as such occupation and user interfered with the mineral rights. Vance v. Pritchard, 213 N.C. 552, 197 S.E. 182; Hoilman v. Johnson, 164 N.C. 268, 80 S.E. 249, 250. In the case last cited the rule is thus stated by the Supreme Court of North Carolina: "The owner of the surface can acquire no title to the minerals by exclusive and continuous possession of the surface, nor does the owner of the minerals lose his right or his possession by any length of nonuser. He must be disseised to lose his right, and there can be no disseisen by any act which does not actually take the minerals out of his possession."

We agree with the court below, therefore, that plaintiffs were entitled to a directed verdict upon the issues submitted and upon such verdict to a judgment that they were the owners of the mineral interests in the land. This, however, does not dispose of the case. Defendant is admittedly a public service corporation enjoying the right of eminent domain. As such, it is entitled to maintain its dam and flood the lands in controversy even though this may interfere with plaintiffs' right of access to the minerals contained in the land; for in North Carolina the rule is well settled that such a corporation may proceed with the erection of works of a public nature which may affect the property of others, being answerable to the owners of the property for any resulting damage. Such works may not be abated at the suit of a private person injured thereby, but damages will be awarded him, the proceedings in such case being in the nature of proceedings to condemn an easement. Bruton v. Carolina Power & Light Co., 217 N.C. 1, 6 S.E.2d 822; Clinard v. Town of Kernersville,

215 N.C. 745, 3 S.E.2d 267; Rhodes v. Durham, 165 N.C. 679, 81 S.E. 938; Ridley v. Seaboard & Roanoke R. Co., 118 N.C. 996, 24 S.E. 730, 32 L.R.A. 708. The rule is thus stated in Rhodes v. Durham, supra [165 N.C. 679, 81 S.E. 939]: "Our decisions are also in support of the proposition that where the injuries are by reason of structures or conditions permanent in their nature, and their existence and maintenance is guaranteed or protected by the power of eminent domain, or because the interest of the public therein is of such an exigent nature that right of abatement at the instance of an individual is of necessity denied, it is open to either plaintiff or defendant to demand that permanent damages be awarded; the proceedings in such cases to some extent taking on the nature of condemning an easement."

Since defendant asserted in its pleadings the right as a public service corporation to maintain the dam and pond which interfere with the right of access of plaintiffs to the minerals, a question was raised with respect to such right on its part, and a decision as to this as well as to the conflicting rights of plaintiffs was necessary to a complete determination of the controversy between the parties. Not only is this true, but the flooding of the land by defendant was set forth in the complaint and the prayer of the complaint was that the rights of the defendant as well as those of plaintiffs be determined in the action.

It is clear, however, that, if plaintiffs are not barred by limitations from asking damages on account of the ponding of water by defendant, any adjudication of the rights of the parties should include an award of the damages, if any, which plaintiffs have sustained as a result of such ponding. The right of defendant to invade the rights of plaintiffs is dependent upon the assertion of the right of eminent domain; and this in turn is dependent upon the payment of just compensation. Where, therefore, defendant, relying upon the right of eminent domain, asserts its right to flood lands in which plaintiffs own mineral interests in derogation of plaintiffs' right of access, the damages resulting to plaintiffs from such flooding must be ascertained as in a suit for condemnation. The fact that such assessment of damages is not specifically asked in the pleadings is immaterial. In addition to the fact that general relief is prayed, the parties specifically ask that their rights be determined; and

defendant having asserted its right as a public service corporation to flood the lands, assessment of damages is necessary to such determination.

■ Defendant contends that it has acquired and can acquire no easement from plaintiffs as owners of mineral rights in the land, and that, at all events, any right to recover damages on account of the flooding was vested, not in plaintiffs, but in plaintiffs' predecessors in title, who owned the property at the time the dam was completed and the land flooded. These contentions arise out of misconception as to the rights of plaintiffs. The easement of defendant to flood the lands is a burden not only upon the rights of the owner of the surface but also upon the incorporeal hereditament of access belonging to the owners of the mineral rights. This easement of the owners of the mineral rights may no more be taken from them or its value be impaired without just compensation than the rights of the owner of the surface may be taken from him; 20 C.J. 655; Seaboard Air Line R. Co. v. Wilmington, 154 N.C. 331, 70 S.E. 628. Closely analogous to the right of plaintiffs here is the right of one who has an easement of access over a street or alleyway to recover for deprivation of that right. See Hiatt v. City of Greensboro, 201 N.C. 515, 160 S.E. 748; South Atlantic Waste Co. v. Raleigh, C. & S. R. Co., 167 N.C. 340, 83 S.E. 618.

■■ As to the point that plaintiffs did not own the mineral rights when the first interference with access arose as a result of the construction of defendant's dam and the flooding of the lands, the answer is that, defendant not having acquired the right to interfere with the easement of access of the owners of the mineral rights, either by contract or condemnation, such easement passed to plaintiffs with their purchase of the mineral rights; for it is well settled that the right of access passes with the conveyance of mineral rights. Tiffany on Real Property, 2d ed., vol. 2, p. 1299; Jones on Easements p. 256; Marvin v. Brewster Iron Mining Co., 55 N.Y. 538, 14 Am.Rep. 322; Porter v. Mack Mfg. Co., 65 W.Va. 636, 64 S.E. 853; note 24 Am.St.Rep. 555. Plaintiffs became entitled to any damage that they sustained thereafter by reason of denial to them of the right of access, and to an award of permanent damages upon the right of defendant to flood the land in derogation of their right of access being adjudicated. This does not mean, of course, that the claim for damages of the prior owner passes to the grantee, but that the mineral rights including the right of access do pass, and that the grantee may not be deprived of this right by assertion of the right of eminent domain without just compensation being made him by way of permanent damages. In North Carolina, the right to flood the lands in derogation of plaintiffs' easement of access does not arise merely upon the erection of the structure causing the flooding, but upon the institution of proceedings looking to the award of due compensation; and, until such proceedings are instituted by one side or the other, the flooding constitutes a mere invasion of rights which pass with a conveyance of the property to which they are attached. Directly in point is the case of Livermon v. Roanoke, etc., R. R., 109 N.C. 52, 13 S.E. 734, Id., 114 N.C. 692, 19 S.E. 64, where the court said: "It is insisted, however, that, as the plaintiff was not the owner of the land at the time of the entry and the completion of the road, she is not entitled to maintain this proceeding. The cases from other states, cited by the defendant's counsel, sustain this view so far as the recovery of mere damages, incident to the unlawful entry, is concerned. They may also be applicable where the railroad company acquires a right by a simple entry, leaving the damages and compensation to be subsequently assessed. In such cases the claim of the owner is said to be personal, and does not pass to a purchaser by an ordinary conveyance of the land. The principle does not apply where, as in our case, (under the general act,) the railroad company acquires no right whatever until, either at its instance or that of the owner, proceedings have been instituted to condemn the property. Until this is done the company occupies the land without title, (Land v. Railroad Co., supra,) and it would seem quite plain that the occupation of a trespasser ought not to take away the owner's power of alienation."

To like effect is the decision in Beal v. Durham & C. R. Co., 136 N.C. 298, 48 S.E. 674, where the court said: "The principal contention is that at the time of the entry and new location the land did not belong to the plaintiff, and that whatever damage was sustained belongs to the plaintiff's grantor; that plaintiff took the land subject to the burden. This court has decided the question adversely to the defendant's contention. We can add nothing to the discussion of the question by Shepherd, J., in

Livermon v. R. R., 109 N.C. 52, 13 S.E. 734; Phillips v. Telegraph Co., 130 N.C. 513, 41 S.E. 1022 [89 Am.St.Rep. 868]. The claim of the plaintiff is not for a trespass, which is personal and does not pass with the title, but for payment of an easement acquired by the defendant by the entry and location of its roadbed. The defendant was entitled by its charter or by section 1946 of the Code of 1883, to enter upon the land and locate its road. It acquired the easement either by condemnation proceedings properly conducted, or by paying the value thereof as assessed in a proceeding brought by the owner of the land."

Both the Livermon and Beal cases are cited with approval in the recent case of Nantahala Power & Light Co. v. Whiting Mfg. Co., 209 N.C. 560, 184 S.E. 48, 50, wherein it was held that "the right to convey the land is not affected by the mere filing of condemnation proceedings, nor by appraisement without confirmation and payment, as all rights would pass to the grantee." See also Louisville & N. R. Co. v. Nichols, 187 N.C. 153, 120 S.E. 819; Caveness v. Charlotte, Raleigh & S. R. Co., 172 N.C. 305, 90 S.E. 244; Beach v. Wilmington & W. R. Co., 120 N.C. 498, 26 S.E. 703; Phillips v. Postal Tel. Cable Co., 130 N.C. 513, 41 S.E. 1022, 89 Am.St.Rep. 868; note Ann.Cas.1912A, p. 1058.

And there is nothing to the contrary in the decision in Porter v. Aberdeen & R. F. R. R., 148 N.C. 563, 62 S.E. 741, 743. That case held that the owner at the time of entry and subsequent owners were necessary parties to a proceeding to assess present, past and prospective damages on account of the entry by a party enjoying the right of eminent domain. John Porter held title at time of entry. Subsequently he conveyed title to H. B. and C. B. Porter, who reconveyed to him after suit was instituted. The case was dismissed in the lower court as to H. B. and C. B. Porter, who had failed to file complaint, and was nonsuited as to John Porter on the ground that he did not own the property at the time suit was instituted. This action was reversed, the court saying: "John Porter has an interest in such a recovery, and is a necessary party, both as being owner and in possession at the time of the original and wrongful entry and as present holder of the title, and H. B. and C. B. Porter are entitled to share in such recovery for the portion of the injury suffered while they were owners. * * * When the road pays the permanent dam-

ages, the easement should pass, and, as stated, all whose presence is necessary to insure this result and protect the company from further action concerning it should be parties."

■ A different rule prevails in some jurisdictions. Cf. Roberts v. Northern Pac. R. Co., 158 U.S. 1, 15 S.Ct. 756, 39 L.Ed. 873; Duke Power Co. v. Rutland, 4 Cir., 60 F.2d 194, 197, 198; note Ann.Cas.1912A, p. 1056; 20 C.J. 860, note 92. We are governed here, however, by the law of North Carolina; and in the light of the authorities above cited, we think there can be no doubt as to the right of the owner of an interest in lands to recover permanent damages on account of an interference with rights such as is here involved, even though such interference may have commenced prior to his acquisition of the interest, provided, of course, no assessment of permanent damages on account of such interference has theretofore been made.

■ And we do not think that plaintiffs' right to permanent damages for the impairment of their right of access is affected by any of the limitations pleaded. Of course, the right to recover past damages for wrongful interference with the right of access to mineral rights is barred except as to such damages as may be shown within the statutory period; but the right of access itself is not barred until defendant has acquired by prescription the right to flood the lands as against the exercise of such right of access. To accomplish this, twenty years is required. Hemphill v. Board of Aldermen, 212 N.C. 185, 193 S.E. 153; Draper v. Conner & Walters Co., 187 N.C. 18, 121 S.E. 29; Nash v. Shute, 184 N.C. 383, 114 S.E. 470; Arnold v. Stevens, 24 Pick., Mass., 106, 35 Am.Dec. 305. What we have here is, not the ordinary case of adverse possession of lands, but the diminution of rights under an incorporeal hereditament by the exercise of rights pertaining to an incorporeal hereditament of a different character, or, to state it differently, the acquisition of an easement of flowage which will interfere with the easement of access. There can be no question, we think, but that the prescriptive period of twenty years is the one applicable to such a situation, and that the right of access is not affected by the flooding of the lands for less than the twenty year period. In La Roque v. Kennedy, 156 N.C. 360, 72 S.E. 454, 459, where defendant raised the height of his dam so that water was ponded on

plaintiff's land, the court held that there was user under claim of right for more than twenty years, "which" said the court, "would be necessary to confer an easement." See also Darr v. Carolina Aluminum Co., 215 N.C. 768, 3 S.E.2d 434; Grant v. Tallassee Power Co., 196 N.C. 617, 146 S.E. 531; Weaver v. Pitts, 191 N.C. 747, 133 S.E. 2. And an easement is lost by adverse possession and user only where same is continued for the prescriptive period. 17 Am.Jur. 1030; Hunter v. West, 172 N.C. 160, 90 S.E. 130. The defendant could have acquired the right to flood the lands in derogation of the right of access of plaintiffs by instituting condemnation proceedings for that purpose. Not having done so, it cannot complain of delay of plaintiffs in seeking their remedy, so long as they act before their right has been extinguished by prescription. Land v. Wilmington & W. R. Co., 107 N.C. 72, 12 S.E. 125. Plaintiffs are not barred of remedy unless defendant's flooding of the lands has been continued for such length of time as to perfect its easement of flowage. Livermon v. Roanoke, etc., R. Co., 109 N.C. 52, 13 S.E. 734.

This suit was instituted in 1936, considerably less than twenty years from the time when the flooding of the lands was commenced and plaintiffs' access to the minerals in the lands was first obstructed. The amendment made in 1940 did not change the nature of the action, but merely the allegation as to plaintiffs' interest in the minerals. As stated above, no amendment of the pleadings is necessary to justify the award of permanant damages to plaintiffs as a result of defendant's interference with their rights. The complaint sets forth their interest in the minerals and asks that their rights thereto and also the rights of defendant be adjudicated. Defendant by its answer and amended answer has set up its right to maintain its dam and flood the lands in which plaintiffs claim mineral interests. An adjudication of the rights of the parties, upon a finding that plaintiffs are the owners of the mineral interests, necessitates a declaration of defendant's right to flood the lands and plaintiffs' right to any permanent damages sustained as a result thereof. Under the liberal rules of pleading now established for the federal courts no express averment with respect to such damages is necessary. If, however, a more specific allegation as to the damages claimed is desired, a bill of particulars may be asked.

For the reasons stated, the judgment appealed from will be affirmed in so far as it adjudges the rights of plaintiffs to the mineral interests claimed by them, and will be reversed in so far as it fails to adjudicate the right of defendant to flood the lands; and the cause will be remanded to the end that such right of defendant may be adjudicated and the damages to which plaintiffs may be entitled by reason of defendant's infringement of their right of access may be determined.

Affirmed in part, reversed in part and remanded.