# CHARLESTON.

## PORTER v. MACK MANUFACTURING COMPANY.

Submitted June 6, 1908.     Decided May 4, 1909.

1. MINES AND MINERALS—*Reservation—Rights of Grantor in Surface.*

   A deed conveying land reserving to the grantor all the clay, fire clay and other minerals, severs them in ownership from the land, creates two estates therein. The owner of the surface cannot obstruct the mineral owner from a use of the surface for a tramway or other means of transportation fairly useful and necessary. (p. 637.)

2. SAME—*Rights of Mineral Owners—Use of Surface—Injunction.*

   Injunction lies for one owning minerals in land, with right to use the surface for mining and removing them, to prevent the surface owner from unlawfully resisting and obstructing the mineral owner in the legitimate use of the surface for mining and removing the minerals. (p. 640.)

Appeal from Circuit Court, Hancock County.

Bill by Fred G. Porter against the Mack Manufacturing Company. Decree for plaintiff, and defendant appeals.

*Affirmed.*

HART & McKENZIE, for appellant.

J. R. DONEHOO and J. B. SOMMERVILLE, for appellee.

BRANNON, JUDGE:

This is a chancery suit brought in the circuit court of Hancock county by Fred G. Porter against the Mack Manufacturing Company. Porter claiming the fire clay, coal and other minerals in a tract of land went upon it with his hands to construct a tram road upon the surface for the purpose of conveying fire clay and perhaps other minerals, which he owned, in order to use them in the manufacture of fire brick in a plant of his upon

adjoining land. The Mack Manufacturing Company denied his right to construct a tram road, and indeed, denied the right, as its answer tell us, of Porter to use the surface for taking away the minerals. The Mack Manufacturing Company absolutely refused, as owners of the surface, to let Porter build the tram road. It caused a warrant to be sued out from a justice to arrest the employees of Porter for criminal trespass, and probably caused the indictment of Porter and his employees therefor. In short, the Mack Manufacturing Company admits in its answer that it opposed and resisted the right of Porter to go upon the land and construct a tram road or to use the surface. This suit by Porter was to enjoin the Mack Manufacturing Company from interfering with his use of the surface for the purpose of making a tram road and of mining the fire clay, and to declare the right of Porter to have a tramway for the conveyance of the clay, and to enjoin the Mack Manufacturing Company from interference with this right and from obstructing Porter in its exercise. The circuit court entered a decree permitting Porter to construct and operate a single tramway over the surface of the tract by a certain route of sufficient width, strength and capacity to remove from the mine fire clay and other minerals, and allowing Porter to open one pit or mine in the surface of the land at a certain point designated for the production of fire clay and other minerals with the provision in the decree that Porter should so operate the mine and so construct and operate the tramway with due regard for the rights of the Mack Manufacturing Company in the surface. The Mack Manufacturing Company has taken this appeal.

Desellem and Cooper were owners of the whole body, the *corpus*, of a tract of land, and by deed they conveyed the tract to Evans, the grantors "reserving to themselves all the clay, fire clay, coal, stone and minerals of whatever kind underlying the above described tract of land, with the right to mine and remove the same." By this deed Desellem and Cooper granted the surface, granted the land, except that they did not grant, but retained, the minerals. In other words, they made two estates out of the land, two properties, one the surface or body of the land, the other the minerals, which the deed operated to leave in them, or rather, the minerals before vested in them remained in them. They thus severed the minerals from the balance of

the land. Their deed did not pass the minerals. They had as full estate in the minerals as if the minerals had been separately granted to them by some one else. There is no difference as to title thereto between the case where minerals are granted to one by the owner of the body of the land, and the case where the owner of the body of the land grants the land away, excepting the minerals. *Preston* v. *White,* 57 W. Va. 278. If the deed of Desellem and Cooper had not reserved the right to mine and remove the minerals, there would have been an implied right to use the surface in such manner, and with such means as would be fairly necessary for the enjoyment of their estates in the minerals. Without this right what account would be the minerals which they reserved? But their deed expressly retained the right to mine and remove the minerals. In the great case of *Marvin* v. *Brewster Iron Mining Co.,* 55 N. Y. 538, (14 Amer R. 322), this subject is discussed at great length and with great ability. It is true that before that case this question had been elucidated in English decisions. In that case it was held that, "A reservation in a deed of land of the minerals which may be found therein implies the right to penetrate the surface for the minerals, and to use such means in mining and removing them as are necessary; but the means used must be necessary as distinguished from convenient or reasonable, and the surface owner is entitled to subjacent support for the soil in its natural state." The court said, "the whole estate was at first in Parks. He severed it by his conveyance to Downs. He transferred to Downs and his grantees only the surface land. It is said that such a transference is of the surface, and of all profit which can be got from cultivating it or building upon it or using it; that thus much is intended to be conveyed. But as in the same conveyance there is a reserve to the grantor of an important part of the general estate, and of important incidents thereto, it is manifest that if the reserve is effectual and still operative, there is imposed upon the estate conveyed a serious servitude; though it in its turn becomes to a certain extent dominant over the estate reserved." The deed in that case read "reserving always all mineral ores now known or that may hereafter be known, with the privilege of going to and from all beds of ores that may be hereafter worked, on the most convenient route to and from." The court said that this reservation "is also a privilege of way

upon the premises." The court also said: "A reserve of minerals and mining rights is construed as an actual grant thereof. It differs not, whether the right to mine is by an exception from a deed of the surface, or by a grant of the mine by the owner of the whole estate, therein reserving to himself the surface." It seems hardly necessary, in this mining state, to state these principles of law; but it may not be without benefit to do so. They are old and settled principles. I refer to 27 Cyc. 688, and to Snyder on Mines, secs. 1007, 1009. "As against the owner of the surface, each of the several purchasers would have the right, without any express words of grant for that purpose, to go upon the surface to open a way by shaft, or drift, or well, to his underlying estate, and to occupy so much of the surface, beyond the limits of his shaft, drift, or well, as might be necessary to operate his estate, and remove the product thereof. This is a right to be exercised with due regard to the owner of the surface, and its exercise will be restrained within proper limits by a court of equity, if this becomes necessary; but subject to this limitation, it is a right growing out of the contract of sale, the position of the stratum sold, and the impossibility of reaching it in any other manner." Section 1009. In *Chartiers Block Coal Co.* v. *Mellon* 152 Pa. St. 286 (25 Atl. R. 597), we find this holding: "The owner of the surface of land who has granted to another person the coal under his land, has a right, apart from any reservation in the deed, to access through the coal to the strata underlying it." Such were the rights reserved by Desellem and Cooper. By conveyance these mineral rights became vested in Fred G. Porter, and the right to the surface conveyed by Desellem and Cooper to Evans came to be vested in Mack Manufacturing Company.

Counsel for defence would oppose the plaintiff's suit, upon many authorities, on the theory that his right stands on the law of way of necessity, and that he must prove that necessity. Say that the law of way of necessity is applicable. Do we not know, without proof, that a use of the surface of necessity calls for a way of inlet and outlet to one who owns the coal or other mineral to produce and market it? The question submits the answer. But how can we logically talk about a way of necessity. That is *obiter*, because the deed reserves minerals, "with the right to mine and remove the same." What use to mine, with-

out removal? How can removal be effected without a right to have a wagon way to transport outside the tract? A tramway is just as legitimate as a wagon way, perhaps more so. We do not deny that it must appear that the tram is necessary to the use of the minerals; but it is not technically a way of necessity over the grantor's remaining land.

It is even argued that Porter had to first prove that there are minerals in the land. This is not so. He had right to search for them, if they had not been before found. And he had right to build a tramway, or other way suitable, in anticipation of finding the minerals sought for. But, in fact, prior work had found the useful fire clay, and this tram was considered by Porter as a suitable, convenient and necessary mode of transportation. It is so proven, if we cannot say so without proof, as we can.

It is said that equity has no jurisdiction because there is adequate remedy at law. That is a ground assigned in the demurrer, but not insisted upon in the brief. It is untenable. What remedy? We are not informed by counsel. An action at law might give damages; but how measure damages? How many actions? For each day, week or month? That would not give the easement, the ingress and egress. And that would say that Porter must give up his right of ingress and egress, his part of the body of the land. Indeed, there is no question of pecuniary damage. Porter owned part of the land, not the surface, but the minerals. He had a property therein, and a right as to the surface, and this claim would deny this property right; would be akin to denial by a cotenant of joint use. Porter has just as much right to his share, or portion, as has the defendant to the surface, and that property cannot be enjoyed without use of the surface. The deed to Evans reserved this property. The very nature of the case tells that equity is the only court that can give adequate relief. The equity remedy is well settled to restrain obstruction to clear right of way or easement. High on Injunction, secs. 886, 896; *Fluharty* v. *Fleming,* 58 W. Va. 669; *Tuft* v. *Copen,* 37 *Id.* 623. It cannot be said that Porter must first establish his right at law. It is not controverted, but admitted, that Porter is owner of the minerals. This ownership is conclusively established. "But it is not necessary that complainant's title should have been actually established by an

action at law, in order to give a court of equity jurisdiction, for if he makes out a *prima facie* title and the same is not controverted by the defendant, he is entitled to an injunction to prevent trespass likely to result in irreparable injury to his property. Greater latitude is allowed in the case of trespass to mining property than in restraining ordinary trespass to realty, for the mineral is the chief value of this species of property, and if the trespass were allowed to continue for a great length of time, it would deteriorate the value of the property." Snyder on Mines, secs. 480, 481.

Counsel says that the bill alleges irreparable injury without stating facts showing it. Clearly this position can not be sustained. The bill shows a severance of minerals from the surface, a property in Porter of the minerals, and an acknowledged resistance by the surface owner of the right of way and right to open the surface to get the minerals, and a clear obstruction of the right. We judicially know that ownership of the minerals is a property right and of great value, and there is proven and admitted open denial, open resistance and obstruction of the right vested in Porter, not merely by implication, but by express reservation in the deed to Evans.

The bill alleges, the evidence shows that the tramway is a suitable and necessary means of transporting the fire clay and that the opening allowed was necessary.

We see no error in the decree, and therefore affirm it.

*Affirmed.*