Albert H. COLE, Charles H. Stephens, Jr.,
and Louise K. Laws, Trustees of Cole
& Crane Real Estate Trust, Plaintiffs,

v.

ROSS COAL COMPANY, a Corporation,
Defendant.

Civ. A. No. 823.

United States District Court
S. D. West Virginia, at Huntington.

May 2, 1957.

S. S. McNeer, Huntington, W. Va., for plaintiffs.

E. A. Marshall, Huntington, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

This is an action for declaratory judgment brought under 28 U.S.C.A. § 2201, seeking construction of a deed and a declaration of the rights of the parties thereunder. Plaintiffs are trustees of a real estate trust created in 1916, and are citizens of Indiana and Ohio. Defendant is a West Virginia corporation.

The deed in controversy, dated August 10, 1939, concerns real estate and underlying coal seams situated in Logan County, West Virginia, in the Southern District of West Virginia. Plaintiffs seek a judicial determination that under that instrument plaintiffs have the exclusive right to use the surface of that property, and that defendant's right to use the surface of the tract involved is limited to placing thereon (1) bore holes for pumping water; (2) airshafts for ventilating fans; (3) travel ways and hoist ways for workmen and supplies; (4) prospecting holes; (5) power lines; and (6) electric substations, all in connection with mining the underlying coal which defendant owns. Defendant denies plaintiffs' exclusive right to the use of the surface of that tract, or that defendant's rights are so limited. A justiciable controversy exists between the parties in that both lay claim to the superior right to build a coal mining tipple upon the same tract of land. The mining rights in dispute exceed $3,000 in value, exclusive of interest and costs.

Plaintiffs have made a motion for summary judgment under Rule 56, Federal Rules of Civil Procedure, 28 U.S. C.A., asserting that there is "no genuine issue as to any material fact as appears from the pleadings and the admissions made by defendant in its brief." Any admissions made in briefs of counsel cannot be considered on this motion for

summary judgment, because such briefs are not a part of the record. Sardo v. McGrath, 90 U.S.App.D.C. 195, 196 F.2d 20, 22–23; Goldman v. Summerfield, 94 U.S.App.D.C. 209, 214 F.2d 858, 859; Allen v. Radio Corporation of America, D.C.D.Del., 47 F.Supp. 244, 245–246; 3 Barron & Holtzoff, Federal Practice and Procedure, Rules Ed. section 1236, page 91; 6 Moore's Federal Practice, 2d Ed., § 56.11(1), page 2062. However, plaintiffs have incorporated the admissions to which they refer in an affidavit of one Tom Stark, who is Chief Engineer for the plaintiffs and who avers he has personal knowledge of the facts, and inasmuch as the defendant has filed no counter-affidavit, those facts will be accepted by the Court as true for the purpose of this motion.

Looking to the complaint, answer, the above-mentioned affidavit, and certified copies of two deeds dated 1939 and 1954 which were admitted into evidence without objection, the voluminous facts clearly indicate that there are no substantial issues of fact, and plaintiffs' motion must be granted in part and denied in part. The facts are these:

Immediately prior to the execution of the deed in question, defendant owned all the coal underlying a 217½-acre tract of land called "Rossmore" tract, and West Virginia Coal & Coke Corporation, plaintiffs' predecessor in title, owned the surface of that same tract. Furthermore, West Virginia Coal & Coke had leased of the defendant all of defendant's coal under that 217½-acre tract. In other words, defendant owned the coal and had a lessor's interest in the lease while West Virginia Coal & Coke had all other right, title and interest in the property so far as is pertinent here, including a lessee's interest in the lease. There are several minable seams of coal under this land, at various depths. In 1939, West Virginia Coal & Coke was operating in the Island Creek seam, which is one of the middle seams, removing the coal through a tipple located on an 18-acre sector of this tract. This 18-acre site is the only portion of the surface where a tipple and appurtenant mining improvements can be practicably erected, and the site is marked in red on a map filed with the complaint, marked Plaintiffs' Exhibit B. On August 10, 1939, a deed drawn by Mr. E. A. Bower, counsel for West Virginia Coal & Coke, was executed by four parties: (1) the defendant; (2) R. F. Carson, of Huntington, W. Va.; (3) West Virginia Coal & Coke Corporation; and (4) The First National Bank of the City of New York and Alexander C. Nagle, Trustees. (The rights of parties (2) and (4) are not involved here, and the deed will hereafter be treated as if only between defendant and West Virginia Coal & Coke.) By this document, the lease between defendant and West Virginia Coal & Coke was terminated and the parties' interests were realigned in this manner: West Virginia Coal & Coke was given ownership in fee of the surface and all coal in the Island Creek and overlying seams; defendant was given all the coal underlying the Island Creek seam, along with certain specified surface rights for mining the coal, i. e., bore holes for pumping water, airshafts, etc., as listed above.

The record indicates that West Virginia Coal & Coke terminated operations on the 217½-acre tract in 1945, and by deed of July 14, 1954, conveyed to plaintiffs all the unmined coal in the Island Creek and overlying seams within the 217½-acre area. The 1954 deed also purported to convey to plaintiffs the right to use the 18-acre tipple site previously occupied by West Virginia Coal & Coke, for the purpose of mining coal from the Island Creek and overlying seams in the 217½-acre tract and any and all coal from adjoining tracts. Defendant contends West Virginia Coal & Coke Company's rights granted plaintiffs by the 1954 deed were inferior to the rights of the defendant with respect to the 18-acre tipple site. The 217½-acre tract has no substantial value except for its minerals, but it would be wholly unfeasible to mine the remaining Island Creek vein in that tract, and unprofitable to mine the next lower mineable vein (No. 2 Gas) from

that tract alone. The value of the tract lies in the tipple site, which can be utilized to bring to the surface the coal from the No. 2 Gas seam of the surrounding tracts as well as the No. 2 Gas seam from the 217½-acre tract.

Both parties say that the deed is clear and unambiguous. Defendant says that when you read the whole deed, it expresses a clear intent that defendant has the right not only to mine the underlying seams of coal from under the 217½-acre tract, but also to bring coal from the same vein from other adjacent tracts and then take it up through the surface. Plaintiff says that the deed shows the opposite intention. Defendant has asked for a jury trial, if the deed is ambiguous.

 The question of whether an ambiguity exists in a contract is to be determined by the Court as a matter of law. United States v. Northern Pacific Railway Co., 8 Cir., 188 F.2d 277. In Jackson v. Texas Company, 10 Cir., 75 F.2d 549, 551, the Court states:

"Whatever may be the merit or plausibility of the respective arguments of counsel, the fact remains that the correct decision of this case depends upon the discovery and adoption of the true meaning of the deed * * *. The true meaning of the deed can be arrived at only through the consideration of the language used in it, in the light of the situation of the parties under the circumstances existing at the time of the execution of the deed, together with all fair inferences to be drawn from this situation and these circumstances."

And as stated in National Pigments & Chemical Co. v. C. K. Williams & Co., 8 Cir., 94 F.2d 792, 795, instruments "are not rendered ambiguous by the fact that the parties do not now agree upon the proper construction to be given them. They were deliberately entered into, the language is clear, and its meaning can easily be determined from a consideration of the simple and harmonious facts with which they deal."

The 21-page deed of 1939 describes fully the relative positions of the four parties to the deed, both before and after the effective date of the deed; other background facts are set forth in the pleadings and affidavit, and are not denied. Defendant has not filed any counter-affidavit setting up any facts which would create an issue of fact, or throw any light upon the situation of the parties or the circumstances existing at the time of the execution of the deed. When one reads the deed in the light of the uncontroverted facts, the intent of the parties is clear and the deed is unambiguous. Extrinsic evidence and a jury trial would add nothing in construing this deed, as there are no issues of fact to be resolved.

The issues here are these: First, are the enumerated mining rights granted defendant by the 1939 deed in addition to, or in substitution for, the implied mining rights which an owner of coal normally possesses as an incident of his ownership? Secondly, if defendant is found to have surface rights in addition to those listed in the 1939 deed, including the right to use the surface to build a tipple, are those rights exclusive, or superior to plaintiffs' rights, or subordinate to plaintiffs' rights? Plaintiffs argue that in reading the deed, the clear intent of the parties may be seen, and that was to limit defendant to those special mining rights listed, with West Virginia Coal & Coke given an otherwise exclusive right to use the surface. Defendant urges that the enumerated mining rights merely supplement the usual implied right to mine the coal.

Defendant has worked out a plan whereby the No. 2 Gas seam of coal underlying a group of contiguous tracts will be leased together for one large operation, with the coal brought through the No. 2 Gas seam of the 217½-acre tract and to the surface to a tipple built on the 18-acre tipple site mentioned. Plaintiffs, on the other hand, envisage an operation of comparable scope encompassing the same No. 2 Gas seam of coal from the coterminous tracts, utilizing the

same 18-acre tipple site, except they propose slanting the shaft from the tipple in such a manner that at the boundary line of the 217½-acre Rossmore tract the shaft will still be above the Island Creek vein. Then, under plaintiffs' plan, the shaft will drop through the Island Creek vein into the No. 2 Gas seam on the adjoining tract which plaintiffs own in fee. In that manner, plaintiffs propose to have the mine shaft entirely in their own property, above the Island Creek vein while within the Rossmore tract. The difference in these proposals is due to the element of "wheelage," which is a duty or toll exacted for every ton of coal which is hauled through the passageway of a mine which came from land owned by some other party. If this Court decides plaintiffs have an exclusive right to the use of the surface in question, they can carry out their plan for developing the entire area of coal and avoid paying defendant any wheelage for the coal brought in from adjacent land. However, if defendant is here declared to have surface mining rights which include the right to build a tipple, then defendant can carry out its plan and charge wheelage on the coal coming from other tracts, in the event plaintiffs' coal is mined through defendant's tipple.

The 1939 deed sets out the mining rights of the defendant as follows:

"And for the purpose of mining and producing aforesaid underlying seams of coal and each of them, said West Virginia Company, party of the third part hereto, hereby agrees, for itself, its successors and assigns, that said Ross Company, its successors and assigns, may enter said tract of 217½ acres of land within such underlying seams of coal and each of them, and mine, take and remove all of the mineable and marketable coal therein, making therein suitable and proper entries, air courses and working places to permit the convenient mining of said underlying seams of coal with other like seams of such underlying coal in adjacent or other lands, and place in such mine workings any and all suitable roads, ways, equipment, machinery and appliances suitable for the mining and production of such underlying coal and may place upon and through the surface of said 217½ acres of land, in connection with and for use in mining such underlying coals seams, bore holes for pumping of water from such underlying coal seams and from the workings in said Island Creek seam in said land; may sink air shafts through said surface and install ventilating fans thereon; may place through and upon the surface of said land travel ways and hoist ways for handling workmen and mine supplies; may erect power lines and electric substations upon the surface of said land; and may drill necessary or suitable prospecting holes in said land, without being liable for damage to the surface of said land. And said West Virginia Company, party of the third part hereto, for itself, its successors and assigns, further agrees that said Ross Company, party of the first part hereto, its successors and assigns, may take, haul and transport, free of toll, wheelage or other charge through and within mine workings that may be placed and used in such underlying coal seams in said tract of land, any and all other coal whatsoever derived from other like underlying seams. *Provided, Always,* however, that the uses of aforesaid tract of land and the surface thereof, as next above provided for, shall be in such positions and of such character so that the same will not interfere with any and all coal mining operations of every kind and character now being conducted by said West Virginia Company within and upon said land and within the Island Creek seam therein or that may be hereafter conducted by said West Virginia Company, or its successors and assigns, upon said tract of land or within said Island Creek seam

and within any or all other seams of coal within said tract of land which overlie said Island Creek seam of coal. And Provided, further, that mining operations in aforesaid underlying seams of coal upon said land shall at all times be conducted, operated and maintained in such manner that the intervening natural strata between said Island Creek seam and such underlying seams of coal shall not be injured or destroyed as a proper and sufficient support for the mining of said Island Creek seam and any and all seams of coal overlying the same. And it is known, recognized and agreed by and between said Ross Company, for itself, its successors and assigns, and said West Virginia Company, for itself, its successors and assigns, that mining operations in said Island Creek seam in said tract of land have been conducted for many years and that a large part of the mine workings therein have accumulated and will accumulate large quantities of water which does not naturally drain from said workings and will not be artificially drained therefrom; and said Ross Company, party of the first part hereto, for itself, its successors and assigns, hereby covenants and agrees that it and they assume all risks whatsoever of such accumulation of water affecting or interfering with mining operations in such underlying seams in other or adjacent lands, and therefore, said Ross Company, party of the first part hereto, for itself, its successors and assigns, hereby waives, releases and relinquishes any and all claims whatsoever that may hereafter arise, exist or be asserted in consequence or claimed to be in consequence of the existence of such accumulation of water in said old mine workings in said Island Creek seam of coal."

The only other part of the 1939 deed which mentions Ross Coal's mining rights is in the first portion of the deed where the background of the instrument is set forth, stating the prior rights of the parties:

" * * * said Ross Company will retain title to all the coal in said tract of 217½ acres of land described by aforesaid revised description, underlying said Island Creek seam, with appropriate rights to to mine, take and remove the same".

The case thus boils down to interpreting a deed which in one place states that defendant shall retain the underlying coal with "appropriate rights to mine, take and remove same," and in another paragraph enumerates certain surface mining rights which the defendant is to have. If only the general terms "appropriate rights to mine, take and remove" had been used, or if the instrument were silent as to all mining rights, the defendant would have the implied right to build a tipple on the surface of the land overlying its coal, under the rule of Squires v. Lafferty, 1924, 95 W.Va. 307, 121 S.E. 90. That case held that as an incident to the ownership of coal, the owner possesses

"the right to use the 'surface' of the land in such a manner and with such means as would be fairly necessary to the enjoyment of the mineral estate. * * * This rule is based upon the principle that, when a thing is granted, all means to obtain it and all the fruits and effects of it are also granted." 121 S.E. at page 91.

Plaintiffs urge, however, that by listing the specific mining rights of defendant in the deed, no implied rights are to be read into the instrument under the ancient maxim *expressio unius est exclusio alterius*—the mention of one is the exclusion of another.

The West Virginia Supreme Court of Appeals has been quite explicit in stating that a grant or reservation of a seam of coal includes a grant or reservation of the right to use so much of the surface as is reasonably necessary to mine the coal, when the deed is altogether silent on mining rights. Squires v.

Lafferty, supra; Porter v. Mack Mfg. Co., 1909, 65 W.Va. 636, 64 S.E. 853; Armstrong v. Maryland Coal Co., 1910, 67 W.Va. 589, 69 S.E. 195. No West Virginia case has turned directly upon the question involved here, as to whether the grant of certain rights excludes all others that would normally be implied. In Armstrong v. Maryland Coal Co., supra, the West Virginia Supreme Court quotes from Barringer and Adams on Mines and Mining, Chapter 19, page 576, concerning mining rights:

"It is a general rule of law that, when anything is granted, all the means of attaining it and all the fruits and effects of it are also granted; when uncontrolled by express words of restriction all the powers pass which the law considers to be incident to the grant for the full and necessary enjoyment of it. Consequently a grant or reservation of mines, gives the right to work them, to enter and to mine, unless the language of the grant itself provides otherwise or repels this construction. And this right is so inseparable from a grant of minerals, that not only is it necessarily an implied incident thereof, but it and its derived rights cannot be restrained or excluded by a special affirmative power to do other acts, or by a grant of other privileges necessary or convenient to the working of mines." 69 S.E. at page 203.

That quotation is in accord with the general law of this country, as stated by the leading treatises:

"The implied right to occupy as much of the surface as may be needed to open and work the mineral estate is not limited by a special grant or reservation of privileges which would not be implied." 58 C.J.S. Mines and Minerals § 159, page 333. See also 36 Am.Jur., Sec. 177, Mines and Minerals, page 402:

"* * * unless the language of the conveyance by which the minerals are acquired repels such construction, the mineral estate carries with it the right to use so much of the surface as may be reasonably necessary to reach and remove the minerals. This is an application of the maxim that when anything is granted all of the means of obtaining it and all the fruits and effects of it are also granted. The implied right to occupy so much of the surface as may be needed to open and work the mines is not limited, but rather strengthened, by a special grant of certain timber and water privileges and of a right of way to and from the mines."

In the case of Jilek v. Chicago, Wilmington & Franklin Coal Co., 382 Ill. 241, 47 N.E.2d 96, 146 A.L.R. 871, the conveyance in question granted the owner of the mineral estate (a) the right of subsidence without damage; (b) the use of passageways and entries to move coal from other land; and (c) the right to take surface land for other mining purposes, for a specified price. It was argued, as here, that such a listing of rights excluded any right to enter the mineral estate from the surface, which might otherwise be implied. The court rejected that argument, stating:

"It has been held that the implied right to occupy so much of the surface as may be needed to open and work the mineral estate is not limited by the special grant or reservation of privileges, which would not be implied. Williams v. Gibson, 84 Ala. 228, 4 So. 350, 5 Am.St.Rep. 368; Continental Clay Co. v. Illinois Kaolin Co., 232 Ill.App. 595, 596; Ingle v. Bottoms, 160 Ind. 73, 66 N. E. 160; 18 R.C.L. 1156; 36 Am.Jur. sec. 177, p. 402. In this case the owner of the fee in severing the estates, made a grant of the mineral estate first, giving the grantee all the coal, oil, gas and other minerals. underlying the land. He necessarily reserved to himself all the estate in the land not thereby conveyed. By the conveyance of the minerals he not only necessarily granted all the right of access thereto, but, in addi-

tion, he specifically granted the right to mine and remove all coal and other minerals, with certain extended rights, which, being in excess of any rights of entry implied by law, do not prevent the latter from being effective. We are therefore of the opinion that the rights above set out, granted to the owner of the mineral estate, being in excess of any rights of entry which would be implied, do not prevent the latter from being effective." 382 Ill. at page 252, 47 N. E.2d at page 101, 146 A.L.R. at page 879.

■ Under the above authorities, I take the law to be quite clear that implied mining rights are not excluded by the grant or reservation of supplemental rights which would not be implied. The next inquiry, then, is whether the expressed rights set forth in the 1939 deed are supplemental to those normally implied. The West Virginia Supreme Court of Appeals has not attempted to lay down a list of rights that are to be implied as a part of ownership of coal when severed from ownership of the surface; instead, the case of Squires v. Lafferty, supra, lays down a factual test to be applied in every case, i. e., whether a particular use of the surface would be "fairly necessary to the enjoyment of the mineral estate." If some or all of the defendant's listed surface rights are not "fairly necessary," then, under the authorities above, the reservation of those supplemental rights would not exclude the normal implied rights. On the other hand, if all of the listed rights were "fairly necessary" is that enough to exclude all implied rights?

■ The authorities cited above state that mining rights are to be implied "unless the language * * * repels such construction" (36 Am.Jur., supra), or "when uncontrolled by express words of restriction." Armstrong v. Maryland Coal Co., supra. As stated in the Restatement of Property, § 476(g):

"If the necessity of an easement is such that without it the land cannot be effectively used, nothing less

than explicit language in the conveyance negating the creation of the easement will prevent its implication."

There is no indication anywhere in this deed that defendant's mining rights are to be limited to those enumerated. The deed is merely silent as to tipple rights which are unquestionably necessary in the mining of coal. In the absence of any expressed intent to the contrary, defendant must be deemed to have been given the normal implied mining rights, including tipple rights, in addition to those specified in the deed.

Plaintiffs have cited the case of West Virginia-Pittsburgh Coal Co. v. Strong, 129 W.Va. 832, 42 S.E.2d 46, to support their contention that an express grant of mining rights excludes any implied rights. In that case, an owner of coal sought a declaratory judgment that it could "strip mine" its coal. The deed severing the coal from the rest of the freehold estate had granted the coal owner comprehensive rights concerning use of the surface for conventional methods of mining (slope, drift or shaft mines) and the court held that plaintiff's rights were limited to the usual methods of mining at that time known and accepted as common practice in that county, which at the time of the severance deed in 1904, did not include strip mining. The court rejected the argument that a coal owner had an implied right to strip the coal when unobtainable by other methods of mining, stating that strip mining would *destroy* the surface, whereas a coal owner's implied rights include only the *use* of so much of the surface as is fairly necessary. That case turned upon the court's interpretation of the mining rights granted in the severance deed, and upon the court's decision that strip mining was not the type use of the surface which the law gives an owner of coal as an incident of his ownership; the case does not rule on whether express rights replace all implied rights. That point was not raised, and was not necessary to a decision in the case. What was said was only dicta. The Supreme Court of

West Virginia has never expressly decided this point, and it is, therefore, an open question in West Virginia. The following dictum appears in the case last cited:

"In this matter the mining rights are expressly granted and do not rest upon necessary implication as in a case where the coal is granted without the express grant of mining rights, the express terms of the grant of the right serving to restrict the rights conferred thereto." 42 S.E.2d at page 49.

Concerning this sentence, Professor Donley, in his book, The Law of Coal, Oil and Gas in West Virginia and Virginia, 1951, § 151, page 214, states:

"If specific rights have been granted, it is an open question whether all other rights are thereby excluded. The statement in the West Virginia-Pittsburgh case does not necessarily exclude rights of a character similar to those expressly granted."

Professor Donley further states, § 144, page 195, that it has been the common understanding of the legal profession that a grantee of coal,

" * * * by accepting a deed with specifically enumerated mining rights does not intend to waive any other rights not so enumerated and to which he would otherwise be entitled as incident to his ownership, under the doctrine of the Squires case. For example, suppose that the mining rights provide that the grantee of the coal might erect a tipple. Would he thereby be precluded from erecting any other structure on the land, such as a supply house or a blacksmith shop? Or, suppose that there is granted the right to construct a railroad over the surface. Would the grantee of the coal be denied the right also to construct a road for the use of trucks and automobiles, if such were fairly necessary to the enjoyment of the mineral estate?"

Substantially the same comment is made in "Coal Mining Rights and Privileges in West Virginia," 52 West Virginia Law Review, 39–40, by the same author.

Plaintiffs also cite Yukon Pocahontas Coal Co. v. Ratliff, 1943, 181 Va. 195, 24 S.E.2d 559, 561, to sustain their position concerning expressed rights precluding any implied rights, but the case is quite different from the instant one. There the Virginia court refused to allow use of the surface for the erection of hotels, hospitals, gardens, and employees' homes under a deed which granted use of the surface for making draft mouths, air shafts, wells, tipples, tanks, pipe lines, washers, pumping stations, and "such other devices as [are] necessary for the successful mining and manufacturing and removing said coal," applying the rule of *expressio unius est exclusio alterius*. It is quite clear that hospitals, gardens, and the like are very different in nature from air shafts, tipples, etc., so that it would be an improper extension of the language of the deed to include such things under the catch-all line "such other devices * * *." In the present case, however, no unusual uses of the land are contemplated. The dispute here involves the right to build a tipple and appurtenances, not hotels or hospitals. That case is also of little value here because it concerned the interpretation of language used in a deed, and the court was not called upon to look into any mining rights implied by law.

In view of the circumstances surrounding the 1939 deed, as related by the preface to the deed itself and as stated by the parties here in their pleadings and affidavit, and under the authorities cited above, I hold that defendant's expressed mining rights are in addition to, and not in substitution for, the implied mining rights which the law gives an owner of coal. This is not a case for the application of the maxim *expressio unius est exclusio alterius*, and the plaintiffs must be denied their claim for exclusive right to use the surface of this 217½-acre tract.

It does not follow, however, that because defendant has the implied right to use so much of the surface overlying its coal as is reasonably necessary to mine its coal, it can also use that surface to mine coal from adjoining tracts. Defendant's implied surface rights are in the nature of an easement, and the burden of the servient estate cannot be materially increased. Chafin v. Gay Coal & Coke Co., 109 W.Va. 453, 156 S.E. 47. See annotation, 48 A.L.R. 1406 for a number of cases from other jurisdictions so holding. Defendant has an implied right, by reason of necessity, to mine its own coal under a given tract, but with respect to coal from other tracts, there is no such necessity and therefore there are no such implied rights. It is true that by the terms of this 1939 deed, quoted in the lengthy quotation above, defendant was given the right to transport, free of toll or wheelage, coal from other tracts through the underlying seams of the 217½-acre tract. That grant, however, has nothing to do with surface rights and cannot be read to extend defendant's right to use the surface. Defendant urges that because an owner of a seam of coal possesses as part of his ownership the right to use the passageways to transport coal mined from adjacent lands, the grant of that right in this deed must be taken to mean that defendant can use the surface for coal mined elsewhere, but there is no merit to that contention. Because of the number of parties to the deed and the unusual division of ownership in this 217½-acre tract, the draftsman has seen fit to go into greater detail in establishing the rights of the parties than was actually necessary, but the clear intent of the parties cannot be set aside because of this superfluity.

The deed under scrutiny here further sets forth that defendant's enumerated mining rights,

" * * * shall be in such positions and of such character so that the same will not interfere with any and all coal mining operations of every kind and character * * *

that may be hereafter conducted by said West Virginia Company, or its successors and assigns, upon said tract of land * * *."

This same limitation must be applied to the implied mining rights which defendant holds, for it would be futile to limit the expressed rights and then allow defendant to interfere with the operations of West Virginia Coal & Coke, or those of a successor, by exercising its implied powers. Plaintiffs here are assignees of the West Virginia Company mentioned in the above-quoted clause, and the mining operation they contemplate establishing upon this 217½-acre tract, using the 18-acre tipple-site, falls within the language used. Under that explicit limitation, defendant's mining rights are all subordinate to "operations of every kind and character" conducted by the plaintiffs upon this land, including operations to mine coal from coterminous tracts.

Defendant argues that such an interpretation deprives it of access to its valuable property, and renders its ownership of the coal much less valuable, but defendant must abide by the document which it signed. All the authorities relied upon above which establish the rule of implied mining rights indicate that the implied rights can be limited by the use of clear and unequivocal language in the deed or lease. The last-quoted phrase above is just such language, and while defendant holds the normal implied mining rights, as well as certain enumerated surface rights, it does not have an exclusive or even superior right to use the surface, but under the 1939 deed subordinated its rights to those of plaintiff's predecessor in title. Defendant was cognizant at the time of the signing of the deed that it did not own the only unmined seam of marketable, mineable coal under the 217½-acre tract, for the deed states:

" * * * It is recognized that [the] greater part of what is known as the Island Creek seam of coal in said tract of land has been exhausted, but that seams of coal overlying

and underlying said Island Creek seam are mineable and marketable".

Thus defendant knew, in 1939, that its rights depended upon what course of action plaintiffs' predecessor, West Virginia Coal & Coke might take, for that company had a tipple in operation on the only practicable place to build a tipple, and owned coal yet unmined.

At the time of the execution of this deed, West Virginia Coal & Coke also had under lease for coal-mining purposes a tract of land approximating 1,644 acres which was then, and is now, owned by the plaintiffs, which adjoins the 217½-acre tract, and which could properly and efficiently be operated for coal mining purposes along with the 217½-acre tract of land. Under the plain language of this 1939 deed, defendant could not have interfered if West Virginia Coal & Coke had used the 18-acre tipple-site to mine all the coal from the adjoining 1,644-acre tract, and any other contiguous tracts. Defendant's position was not changed by the fact that West Virginia Coal & Coke ceased its mining operations in that locality, dismantled and removed its tipple, surrendered to plaintiffs its lease on the 1,644-acre tract, deeded plaintiffs the right to use the 18-acre tipple-site for mining coal from the 1,644 acres and land adjoining it, and the Island Creek vein in the 217½-acre tract.

Defendant avers that one further paragraph of the 1939 deed indicates that its mining rights were to be superior to those of plaintiffs, once West Virginia Coal & Coke had mined out the Island Creek seam of coal in the 217½-acre and adjoining tracts:

"And in further consideration of the premises * * * West Virginia Company covenants and agrees, for itself, its successors and assigns, that it will continue, as hereby limited, to pay all of the tangible property taxes lawfully assessed and charged by the State of West Virginia, or by any of its subdivisions, upon said tract of land called 217½ acres and the coal seams therein. Nevertheless, this obligation shall be forever terminated upon the first occurrence of any of the following events, that is to say:— when said Ross Company, or its successors or assigns, or any of them, undertake or begin or agree to begin the mining and production of any coal within said underlying seams, or any of them; or when said West Virginia Company, its successors or assigns, shall permanently discontinue coal mining operations on said tract of land. Upon such termination of next aforesaid obligation of said West Virginia Company, then and thereafter said Ross Company, its successors and assigns, shall pay all such aforementioned taxes that may be lawfully assessed against any or all of said underlying seams of coal and also all such taxes that may be lawfully assessed upon mining improvements and other personal property used in and about or intended to be used in and about the mining of coal in such underlying seams."

There is nothing in that paragraph, however, or any other part of the deed, which will substantiate defendant's theory that its right to use the surface is superior to plaintiffs'. That section of the deed only serves to set forth, as is rather common in deeds severing coal from the surface, who was to pay the property taxes. It indicates that West Virginia Coal & Coke had previously been paying all the property taxes upon the 217½ acres, including all the coal seams, and was willing to continue to do so while carrying on mining operations on the tract. It is obvious, however, that West Virginia Coal & Coke did not desire to pay the property tax upon defendant's underlying seams of coal (1) if defendants were mining the coal, or (2) if West Virginia Coal & Coke had permanently discontinued operations on the tract of land. Nothing can be inferred therefrom to release defendant from the limitation placed upon its rights by the previous paragraph—that defendant's mining rights were not to be used in any

way to interfere with any operations on this land by West Virginia Coal & Coke, their assigns or successors.

■ One other contention of defendant should be mentioned; it states that since the deed of 1939 was drawn up by counsel for West Virginia Coal & Coke, it should be construed most strongly against plaintiffs as assignees of that company. That is an axiomatic rule for resolving ambiguity when construing instruments, and is applicable here in determining whether express mining rights detract from or add to the normal implied rights, but that doctrine cannot be applied to the unambiguous limitation whereby defendant agreed not to interfere with plaintiffs' predecessor in its mining operations upon this 217½-acre tract.

■ I find precedent for granting a part of plaintiffs' claim and denying a part of it in the following declaratory judgment cases: Hoosier Casualty Co. v. Chimes, Inc., D.C.E.D.Mich., 95 F.Supp. 879; Pennsylvania Greyhound Lines v. Board of Public Utility Com'rs, D.C.D. N.J., 107 F.Supp. 521. In the case of American Auto. Ins. Co. v. Indemnity Ins. Co. of North America, D.C.E.D.Pa., 108 F.Supp. 221, 224, the court went so far as to grant plaintiff a summary judgment upon defendant's motion for a summary judgment, quoting from the case of Northland Greyhound Lines, Inc., v. Amalgamated Ass'n of Street, Electric Railway and Motor Coach Employees of America, Division 1150, D.C.D.C., 66 F. Supp. 431, 433:

> "* * * where the case is properly disposable by summary judgment the court should enter whatever judgment is proper in the circumstances. This should be particularly true where the relief asked is a declaration of the rights of the parties to a contract under the Declaratory Judgment statute."

I include in the foregoing discussion all my findings of fact, and I make the following conclusions of law:

1. This Court has jurisdiction of this action, there being a diversity of citizenship between the parties; in excess of $3,000, exclusive of costs and interest, involved; and a justiciable controversy existing between these parties.

■ 2. This is an appropriate case for summary judgment, there being no material issue of fact existing between these parties.

3. Under the terms of the 1939 deed here considered, neither plaintiffs nor defendant has an exclusive right to use the surface of the 217½-acre tract of land.

4. Under the terms of the 1939 deed, as between these parties defendant has the right, except as limited by Conclusion 5, to use the surface of the 217½-acre tract, in connection with mining coal in the 217½-acre tract which is owned by defendant and which geographically underlies the Island Creek seam of coal, for the following uses:

(a) bore holes for pumping water.

(b) airshafts for ventilating fans.

(c) travel ways and hoist ways for workmen and supplies.

(d) prospecting holes.

(e) power lines.

(f) electric substations.

(g) any and all other uses fairly necessary for defendant's enjoyment of its mineral estate.

■ 5. Under the terms of the 1939 deed, as between these parties, defendant's rights enumerated in Conclusion 4, above, are to be in such positions and of such character that the same will not interfere with any and all coal mining operations of every kind and character that may be hereafter conducted by plaintiffs upon the 217½-acre tract of land under consideration here.

6. As between these parties, with the exception of defendant's rights as declared in Conclusion 4 and limited in Conclusion 5, plaintiffs have an otherwise exclusive right to use the surface of the 18-acre tract shown in red on Plaintiffs' Exhibit B attached to the Complaint.