598 F.2d 1339
 4 Fed. R. Evid. Serv. 38
 Roma McKinney JUSTICE, Glen Justice, Fred McKinney, Betty
McKinney, Murrel McKinney, Alberta McKinney, Alva McKinney
Quinn, Jane McKinney, James McKinney, Georgine McKinney,
Charles McKinney and Cindy McKinney, Appellees,
v.
PENNZOIL COMPANY, Appellant.
 No. 78-1151.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 6, 1979.
Decided May 21, 1979.
 
 Fred L. Davis, Jr., Parkersburg, W. Va. (William A. Trainer, Davis, Davis, Hall & Clovis, Parkersburg, W. Va., on brief), for appellant.
 Ray E. Ratliff, Jr., Charleston, W. Va. (Paul J. Kaufman, Kaufman & Ratliff, Charleston, W. Va., on brief), for appellees.
 Before BRYAN, Senior Circuit Judge, RUSSELL and HALL, Circuit Judges.
 K. K. HALL, Circuit Judge:
 
 
 1
 Plaintiffs, owners of the surface rights to certain land situate in Lincoln County, West Virginia, brought suit in state court against defendant Pennzoil Company, the lessee of oil and gas rights in the land, alleging that Pennzoil had unreasonably and negligently damaged the surface incident to its drilling of several oil wells. Defendant removed the case to federal district court on grounds of diversity. 28 U.S.C. § 1441(a). After several years of pretrial maneuvering and an eleventh-hour demand by plaintiffs for jury trial,[1] the case came on for trial. The district court, disagreeing with defendant's contention that under the substantive law of West Virginia the issue of unreasonable use is one to be determined by the judge, submitted the issue to the jury. The jury returned a verdict for the plaintiffs and awarded damages in the amount of $10,000. Defendant appeals certain rulings of the district court. We reverse.
 
 
 2
 The land in question was originally owned in fee simple by A. E. Robertson. In 1904 Robertson executed an oil and gas lease to the Holly Oil Company, Pennzoil's predecessor in interest. In 1920 Robertson sold the land to B. P. McKinney, from whom these plaintiffs have acquired their interests by inheritance or devise. The 1920 deed contained the following reservation:
 
 
 3
 ". . . the Parties of the first part (Robertson) does hereby reserve the Oil & Gass & right to operate same except Gass for domestic use as is set forth in leese."
 
 
 4
 The record is silent as to whether A. E. Robertson is presently alive and, if he is not, to whom he devised or conveyed the oil and gas. Therefore the division of rights in the land is as follows: (1) the surface and all minerals other than oil and gas are owned by the plaintiffs, taking through B. P. McKinney, (2) the oil and gas are owned and leased to Pennzoil by A.E. Robertson or by unnamed parties taking through Robertson, and (3) Pennzoil is the lessee of oil and gas rights under the lease, taking through Holly Oil Company.
 
 
 5
 First. The controlling issue in this litigation is whether Pennzoil, in its drilling operations, exceeded its common law right "to use the 'surface' of the land in such manner and with such means as would be fairly necessary for the enjoyment of the mineral estate." Squires v. Lafferty, 95 W.Va. 307, 309, 121 S.E. 90, 91 (1924). The West Virginia Supreme Court of Appeals has held that the issue of unreasonable use is one to be determined by the court.
 
 
 6
 "(W)e do not think that whether the plaintiff's rights have been invaded, or whether the defendant has exceeded its rights are questions of fact for determination of the jury. In a case where there is a dispute of fact, the jury should find the facts, and from such finding of facts by the jury it is the duty of the court to determine whether the use of the surface by the owner of the minerals has exceeded the fairly necessary use thereof, and whether the owner of the minerals has invaded the rights of the surface owner, and thus exceeded the rights possessed by the owner of such minerals."
 
 
 7
 Adkins v. United Fuel Gas Co., 134 W.Va. 719, 61 S.E.2d 633 (1950).[2]
 
 
 8
 It has been held that federal rules usually control the allocation of function between judge and jury in diversity cases. Byrd v. Blue Ridge Rural Electric Cooperative, Inc., 356 U.S. 525, 533-40, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958). See also Wratchford v. S. J. Groves & Sons Co., 405 F.2d 1061, 1065-66 (4th Cir. 1969). We think, however, that in a real property case arising under West Virginia law the rule of Adkins is binding on a federal court sitting in diversity. We perceive no conflict with the Supreme Court's decision in Byrd.
 
 
 9
 In Byrd, the Court had before it a negligence action brought against an electric power company by the employee of a construction contractor. The employee had been injured while connecting power lines to one of defendant's substations.
 
 
 10
 Jurisdiction was based on diversity of citizenship, and South Carolina law controlled the litigation. One affirmative defense raised was that the claim was within the exclusive jurisdiction of the state's Workmen's Compensation Act. The validity of this defense turned on disputed issues of fact. Under South Carolina law, the factual issues were to be decided by the judge rather than the jury. The Supreme Court rejected defendant/respondent's argument that this rule was binding on a diversity court under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), holding that
 
 
 11
 "(a)n essential characteristic of (the federal) system is the manner in which, in civil common-law actions, it distributes trial functions between judge and jury and, under the influence if not the command of the Seventh Amendment, Assigns the decisions of disputed questions of fact to the jury."
 
 
 12
 Byrd v. Blue Ridge Rural Electric Cooperative, Inc., 356 U.S. at 537, 78 S.Ct. 893 at 901 (emphasis added and citations omitted).
 
 
 13
 The Court noted that the state rule was grounded merely in habit, since under past practice the issue of whether an employee was covered under Workmen's Compensation had usually come before the state court on appeal from a decision of South Carolina's Industrial Commission. The rule reflected, at most, "a policy that administrative determination of 'jurisdictional facts' should not be final but subject to judicial review." Id. at 536, 78 S.Ct. at 900 (citations omitted). The Court found no indication that the rule was "intended to be bound up with the definition of the rights and obligations of the parties." Id. Therefore, it was "merely a form and mode of enforcing (the jurisdictional defense)," Id., and under these circumstances, the strong federal policy of allowing the jury to determine disputed issues of fact was held paramount to the state rule.
 
 
 14
 In contrast, the rule articulated in Adkins v. United Fuel Gas Co.,supra, is one of state property law. Unreasonable use of land by a mineral owner is not measured by the tort standard of the ordinary reasonable man; rather, it is measured by concrete legal standards rooted in the common law. See Adkins v. United Fuel Gas Co., 61 S.E.2d at 635-36 and cases discussed therein. It is not a matter readily susceptible of jury determination. The rule of Adkins is not only bound up with but assures the continuity of those substantive rights and obligations of the parties which were defined generations ago. Compare Wratchford v. S. J. Groves & Sons Co., 405 F.2d at 1065-66.
 
 
 15
 Most importantly, under Adkins disputed issues of fact are not assigned to the judge. All factual issues are resolved by the jury, and the ultimate question of property law is then decided by the judge on the basis of the jury's findings. See p. 1343 Infra. We think this allocation of judge/ jury functions comports with the considerations discussed in Byrd v. Blue Ridge Rural Electric Cooperative, Inc., supra, and we therefore hold that the rule of Adkins is binding on a federal court sitting in diversity.
 
 
 16
 Although plaintiffs seek to distinguish Adkins on the ground that the defendant in that case was the owner of the minerals, as well as the mineral operator, we think this a distinction without a difference. Subject of course to any restrictions in the lease,[3] the lessee/operator enjoys the same right to use the surface as does the lessor/owner, E. g., Atkinson v. Virginia Oil & Gas Co., 72 W.Va. 707, 79 S.E. 647 (1913), in order that both parties may benefit from their interests in the mineral estate.
 
 
 17
 Therefore, the district court erred in submitting the issue of unreasonable use to the jury; the jury's verdict is reversed and the case remanded for a new trial. Under Adkins, the disputed issues of fact concerning the nature and extent of the damage caused by defendant to plaintiffs' land should be submitted to the jury, perhaps on special interrogatories. The court will then determine as a matter of law whether Pennzoil has exceeded its right to fairly and reasonably use the surface for enjoyment of its mineral estate. If the court rules that Pennzoil has exceeded its right, it must delineate where unreasonable use began in order that the jury may properly assess damages.
 
 
 18
 Second. At trial, the plaintiffs put on a great deal of evidence concerning the damage done to their land. There was almost no evidence, however, reasonably specifying the cost to repair the damage or the monetary devaluation of the land, as the district court struck most of plaintiffs' expert witness testimony from the record.
 
 
 19
 It has long been the rule in West Virginia that damages cannot be based on speculation, guess or conjecture. E. g., Spencer v. Steinbrecher, 152 W.Va. 490, 164 S.E.2d 710 (1968), citing Rodgers v. Bailey, 68 W.Va. 186, 69 S.E. 698 (1910). On remand, should the district court find liability against Pennzoil, the plaintiffs must prove damages under the rule of Jarrett v. E. L. Harper & Son, Inc., 235 S.E.2d 362, 365 (W.Va.1977).
 
 
 20
 "When realty is injured the owner may recover the cost of repairing it plus his expenses stemming from the injury including loss of use during the repair period. If the injury cannot be repaired or the cost of repair would exceed the property's market value, then the owner may recover the money equivalent of its lost Value plus his expenses resulting from the injury including loss of use during the time he has been deprived of his property. * * * (A)nnoyance and inconvenience are (also) properly considered as elements in the measure of damages that plaintiffs are entitled to recover, provided that these considerations are measured by an objective standard of ordinary persons acting reasonably under the given conditions."
 
 
 21
 (Emphasis in original)
 
 
 22
 Third. Pennzoil contends that the district court erred by refusing to instruct the jury that any damages must be specifically allocated to subdivided parcels of the land belonging to individual plaintiffs. This argument is without merit.
 
 
 23
 The issue arose when plaintiff Charles McKinney was added as a party plaintiff shortly before trial, after counsel realized that a parcel of the land had been deeded over to him by plaintiff Roma McKinney Justice. The evidence at trial indicated that this parcel, on which three of Pennzoil's five wells were located, sustained the heaviest damage. Pennzoil argues that Charles McKinney, who did not appear at trial, was apparently uninterested in the litigation, and that any award for damage to his parcel should not "fall into the hands" of other family members. We disagree. Plaintiffs have sued to recover damages for injury to the whole of their land; the apportionment of recovery among the various family members according to their respective interests in the land is of no concern to Pennzoil.[4] The district court has flexibility in fashioning relief for parties properly joined, Fed.R.Civ.P. 20(a), and did not abuse his discretion in allowing a so-called "unitary judgment."
 
 
 24
 Fourth. At trial plaintiffs put on a great deal of evidence tending to show that Pennzoil, in its drilling operations, violated the terms of its oil and gas lease. Upon Pennzoil's motion at the close of all the evidence, the district court ruled that plaintiffs were not entitled to assert the terms of the lease as they were not parties to it and had no interest therein. The court accordingly refused to instruct the jury on the provisions of the lease. We find this ruling to be correct.
 
 
 25
 The 1904 oil and gas lease executed by A. E. Robertson to Holly Oil Company contained a number of covenants including, Inter alia, the following:
 
 
 26
 "The Lessors shall have gas for the dwelling from any gas well on said premises free by making connections."
 
 
 27
 In the 1920 deed to B. P. McKinney, Robertson reserved the oil and gas and operating rights,
 
 
 28
 "except Gass for domestic use as is set forth in leese."
 
 
 29
 We think these documents, read together, express the respective parties' intention that the only lease covenant which would inure to the benefit of the surface owners was the "free gas" clause. Therefore, plaintiffs have no standing to assert that Pennzoil has violated any other covenants in the lease; this right inures only to the lessors under that lease.
 
 
 30
 Fifth. Pennzoil assigns as error certain of the district court's evidentiary rulings allowing nonqualified expert witnesses to testify as to damages sustained by plaintiffs, allowing plaintiff Fred McKinney to give opinion testimony as to the value of timber on the land destroyed by Pennzoil, and allowing plaintiffs to put on evidence concerning Pennzoil's failure to obtain their permission prior to conducting drilling activities.
 
 
 31
 The first argument is without merit. After the challenged witnesses had testified, the court agreed with Pennzoil that they were not properly qualified; he struck their testimony from the record and cautioned the jury to disregard it. We think these actions sufficient to protect Pennzoil from any prejudice.
 
 
 32
 Fred McKinney's testimony was based on personal knowledge and otherwise met the requirement of Fed.R.Ev. 701. He stated that he had personally measured the timber felled by Pennzoil, and as recently as 1974 had experience in determining the market price of timber. At any event, a landowner's opinion concerning the value of his land is certainly admissible. E. g., West Virginia Department of Highways v. Sickles, 242 S.E.2d 567 (W.Va.1978). We think the district court properly allowed the testimony.
 
 
 33
 However, at trial on remand plaintiffs may not testify as to Pennzoil's failure to obtain their permission prior to conducting drilling activities. As surface owners, plaintiffs have no "veto power" over the mineral operator's decision to drill. Testimony concerning failure to obtain permission could raise an inference that Pennzoil has breached a duty to plaintiffs a duty it does not owe.
 
 
 34
 Sixth. Finally, Pennzoil assigns as error certain of the district court's procedural rulings allowing plaintiffs to amend their complaint (to add Charles McKinney as party plaintiff) ten days before trial, and granting plaintiffs' last-minute request for jury trial. Both of these rulings were within the sound discretion of the court, Fed.R.Civ.P. 15(a), 39(b), and we do not think he abused his discretion on the facts of this case.[5]
 
 
 35
 The verdict of the jury is reversed, a new trial awarded, and the case remanded for further proceedings not inconsistent with this opinion.
 
 
 36
 REVERSED.
 
 
 
 [1]
 The complaint was filed on March 11, 1975, and demand for jury trial was made on June 23, 1977
 
 
 [2]
 Most severance of minerals from the surface of land in West Virginia was effected several generations ago. Property owners have since learned, often in court, that their surface ownership gives them "no right to prevent such use of the surface as (is) reasonable and necessary for the production and transportation of gas," even if the surface is damaged thereby. Porter v. Mack Mfg. Co., 65 W.Va. 636, 64 S.E. 853 (1909)
 
 
 [3]
 These restrictions may or may not inure to the benefit of the surface owner. See p. 1344 Infra
 
 
 [4]
 At any event, counsel for plaintiffs informed this court at oral argument, dehors the record, that Charles McKinney's parcel has since been deeded back to Mrs. Justice
 
 
 [5]
 Although submission of the unreasonable use issue to the jury was error, plaintiffs were entitled to have a jury determine the nature and extent of injury to their land and, if the court ruled that Pennzoil's use of the land was unreasonable, to determine proper damages